KATHLEEN BOONSTRA, Independent Adm'r with the Will Annexed of the Estate of Joseph Zawistowski, Deceased, Indiv. and on Behalf of All Persons Similarly Situated, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)   No. 1—89—2759

Opinion filed March 6, 1991.—Modified on denial of rehearing June 12, 1991.

Edward A. Cohen, Carolyn M. Schiess, and Ward L. Zielinski, of Chicago, for appellant.

Kelly R. Welsh, of Chicago (Ruth M. Moscovitch and Frederick S. Rhine, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff Kathleen Boonstra, administrator of the estate of Joseph Zawistowski, deceased, filed a citation petition against defendant City of Chicago for recovery of assets belonging to the decedent's estate. Plaintiff's action was brought by plaintiff as administrator of the estate of Joseph Zawistowski, deceased, and as a class action on behalf of all administrators of estates similarly situated. Defendant filed a motion to dismiss the citation petition for failure to state a cause of action. The trial court granted the motion to dismiss. Plaintiff has appealed the order. We reverse and remand.

The asset that is involved in this case is public passenger vehicle license No. 2545, which is a Chicago taxicab license to operate a taxicab in the City of Chicago. The Illinois General Assembly has authorized each municipality, including the City of Chicago, to license and regulate taxicab operations within its municipality. (Ill. Rev. Stat. 1961, ch. 24, par. 11—42—6.) Pursuant to this legislation, in 1963 the City of Chicago adopted a comprehensive scheme for the licensing of taxicab operations in an ordinance entitled "Public Passenger Vehicles." The ordinance included a provision for the issuance of taxicab licenses. The ordinance also provided for the creation of 4,600 taxicab licenses which were subject to a $60 annual renewal licensing fee. The ordinance further provided that all taxicab licenses which had not been revoked, cancelled or surrendered were entitled to renewal upon

their expiration for the calendar year. In addition, the ordinance provided that taxicab "licenses and the rights and privileges herein granted shall be assignable" and in "the event of a licensee's death, the assignment shall be made by his legal representatives." (Chicago Municipal Code §28—9.1 (1963).) If a taxicab license was assigned to a qualified assignee, the taxicab license was "transferred to him by the Commissioner, subject to payment of a transfer fee of $50.00." Chicago Municipal Code §28—9.1 (1963).

On March 3, 1981, Joseph Zawistowski purchased by assignment one of the taxicab licenses that had been previously issued by the City of Chicago, and pursuant to his ownership of the taxicab license, he became an independent taxicab operator/owner. In order to effectuate the assignment, Zawistowski completed an application and other standard forms provided by the City of Chicago for the assignment of taxicab licenses. The application and completed forms were filed with the City of Chicago and the assignment of the taxicab license was approved and accepted by the City of Chicago. The City of Chicago never rejected an application for assignment of a taxicab license from the time that the 1963 public passenger vehicles ordinance was adopted.

On July 16, 1982, the commissioner of the Department of Consumer Services of the City of Chicago (Commissioner) unilaterally issued a moratorium on the assignment of all taxicab licenses. On July 26, 1982, however, a Federal district court issued a preliminary injunction ordering the Commissioner to process the licensees' assignments of their licenses in the ordinary course of the established procedure. (See *Flower Cab Co. v. Petitte* (N.D. Ill. 1987), 658 F. Supp. 1170, 1172.) The seventh circuit granted the City of Chicago's motion for a stay pending appeal. *Flower Cab Co. v. Petitte* (7th Cir. 1982), 685 F.2d 192.

On September 15, 1982, while the *Flower Cab* case was pending in the seventh circuit, the City of Chicago passed an ordinance which contained several amendments dealing with taxicab licenses. One of the amendments repealed chapter 28, section 28—9.1, and created a new provision retroactively banning the assignment of taxicab licenses as of July 16, 1982, the date of the moratorium that had been set by the Commissioner. (Chicago Municipal Code §28—8 (1982); see *Flower Cab Co. v. Petitte* (N.D. Ill. 1987), 658 F. Supp. 1170, 1173.) The 1982 ordinance provides:

> "No license issued pursuant to this chapter shall be assigned, transferred, sold, pledged, encumbered or hypothecated, either voluntarily or involuntarily; nor shall it be subject to attach-

ment, garnishment or execution." Chicago Municipal Code §9—112—130 (1982).

See also Chicago Municipal Code §9—112—130 (1990).

On October 7, 1982, the seventh circuit vacated the Federal district court's preliminary injunction in the *Flower Cab* case. In addition, noting the change in circumstances created by the passage of the September 15, 1982, ordinance by the City of Chicago, the seventh circuit remanded the case to the district court to consider the effect of the new ordinance on the case. *Flower Cab Co.*, 658 F. Supp. at 1173.

In the meantime, Zawistowski paid the annual fee for the renewal of his taxicab license for the years 1982 through 1984, and the license was renewed. On November 2, 1984, however, Zawistowski died. Two days after his death, the City of Chicago, through its agent, went to the decedent's home and demanded and received the taxicab license on the premise that after the City of Chicago ordinance was amended in 1982, the taxicab license was not assignable and it therefore belonged to the City of Chicago. No compensation was given for the taking of the taxicab license. Prior to the time that the City of Chicago ordinance was amended in 1982, a taxicab license had a market value ranging from $25,000 to $27,000.

On March 27, 1987, the Federal district court entered a summary judgment in the *Flower Cab* case. (*Flower Cab Co. v. Petitte* (N.D. Ill. 1987), 658 F. Supp. 1170, 1178.) The Federal district court found that the action of the Commissioner in 1982, which imposed a moratorium on the assignment of taxicab licenses, violated the procedural and substantive due process rights of taxicab licensees as a matter of law. The Federal district court also found that the licensees in the case before it were entitled to damages during the duration of the moratorium on the assignment of taxicab licenses. (*Flower Cab Co.*, 658 F. Supp. at 1182.) The City of Chicago did not appeal the *Flower Cab* case.

In January 1988, however, the City of Chicago passed another ordinance which repealed the prohibition against the assignment of taxicab licenses and again authorized the assignment of taxicab licenses. The 1988 ordinance provided that all taxicab licenses "shall be freely transferable to any person qualified under the provision of this chapter to be a license holder." The 1988 ordinance also provided that for purposes of the ordinance, "the word 'transfer' shall include buying, selling and assigning a license or licenses." Chicago Municipal Code §28—19(f)(1) (1988).

In July 1990, the Municipal Code of the City of Chicago (Code) was reorganized and recodified for the first time in over 50 years. The 1990 Code includes both the 1988 ordinance which permits the transfer of taxicab medallions (Chicago Municipal Code §28—19(f)(1) (1988), recodified as §9—80—130 (1990)), and the 1982 ordinance which prohibits the transfer of taxicab medallions (Chicago Municipal Code §9—112—130 (1990)). Although the two ordinances appear to be inconsistent, the City apparently ignores the 1982 ordinance that is included in the 1990 Code, and permits the transfer of taxicab medallions pursuant to the 1988 ordinance that is included in the 1990 Code.

The 1990 Code was adopted while the case *sub judice* and a companion class action case remain pending. (See *Dilanjian Taxi Service, Inc. v. City of Chicago* (1990), 203 Ill. App. 3d 300, 560 N.E.2d 1195.) The *Dilanjian* case is pending in the circuit court of Cook County chancery division after a dismissal of the case for a lack of standing was reversed on appeal. The only real difference between the *Dilanjian* case and the present case is the fact that the present case involves a decedent's estate and therefore emanates from the probate division of the circuit court of Cook County.

In the present case, the citation petition alleges that the plaintiff's decedent had a constitutionally protected property interest in the taxicab license and its assignability. In addition, the citation petition alleges that the 1982 ordinance of the City of Chicago is unlawful and unconstitutional because it deprives the plaintiff's decedent's estate of property rights without due process of law in the following particulars: (1) it abrogates one's property rights without notice and an opportunity for a hearing; (2) it allows the taking of one's property without just compensation; and (3) it is wholly without any rational basis and fails to serve any legitimate governmental interest. Finally, the citation petition alleges that the plaintiff was injured by the unconstitutional ordinance of 1982 in that the City of Chicago took specific property "which belongs to and was an asset of the estate, without any compensation."

In its motion to dismiss, the City of Chicago contends that a "taxicab license is not property" and that "even if one assumes that an assignable taxicab license constitutes property, as long as it acts through the legislative process, the government may reorder the property rights of its citizens as it chooses even depriving citizens of property." The motion therefore concludes that because the City of Chicago does not have "possession or control of any personal property of the Decedent" the "Citation Petition should be dismissed."

On appeal, the City of Chicago first argues that we lack jurisdiction to hear this appeal. The City of Chicago states: "The order dismissing the petition does not indicate that the motion is with prejudice. The dismissal of a complaint under §2—615 [of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615)] has generally been held not to be appealable unless it contains a statement that the dismissal is with prejudice, since it is otherwise not apparent whether the trial court believed that it was impossible for plaintiff to state a cause of action, or merely that the present complaint was insufficient." We disagree.

■ The appealability of an order is determined by its substance rather than its form. Where a dismissal is based upon a determination that the complaint is not sufficient to state a cause of action, the order is final and appealable by its nature. Thus, an order of dismissal for failure to state a cause of action which is not followed by a request to amend is a final, appealable order and does not require a specific declaration by the plaintiff that he wishes to stand on the complaint. In addition, an order is not deprived of finality merely because it does not include the words "with prejudice." (See *In re Estate of Hopkins* (1988), 166 Ill. App. 3d 652, 655, 520 N.E.2d 415, 417; *Dunavan v. Calandrino* (1988), 167 Ill. App. 3d 952, 957, 522 N.E.2d 347, 349 (effect of involuntary dismissal); Ill. Rev. Stat. 1989, ch. 110½, par. 273.) We therefore hold that where, as here, a plaintiff neither sought nor received permission to amend her complaint, the order of dismissal for failure to state a cause of action is a final and appealable order.

■ The City of Chicago also contends that the order appealed from in this case is not a final and appealable order "because the trial court did not address the class allegation of the petition." We disagree. Although the citation petition was filed "individually and on behalf of all persons similarly situated," no motion had been made and no order had been entered for class certification when the case was dismissed for failure to state a cause of action. Under the circumstances, we conclude that the order entered by the trial court disposed of the case completely and ended the litigation in the trial court. We therefore hold that the order from which the appeal is being taken is a final and appealable order. See *Rutan v. Republican Party of Illinois* (7th Cir. 1989), 868 F.2d 943, 946-47, *aff'd in part & rev'd in part on other grounds* (1990), 497 U.S. 62, 111 L. Ed. 2d 52, 110 S. Ct. 2729.

■ We next address the issues in the City of Chicago's motion to dismiss. Whether the plaintiff has a constitutionally protected prop-

erty interest in the taxicab license and its assignability must be assessed by analyzing the nature of a property interest. The hallmark of constitutionally protected property is an individual entitlement which cannot be removed except for cause or with just compensation. The types of interests which contain this entitlement are varied and virtually impossible to identify under any nomenclature. Some examples of interests which have been held to be a constitutionally protected property interest, however, are enlightening: *Barry v. Barchi* (1979), 443 U.S. 55, 61 L. Ed. 2d 365, 99 S. Ct. 2642 (horse trainer's license protected); *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (disability benefits); *Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (driver's license); *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (welfare benefits); see *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148.

We believe that the examples of interests, stated above, which have been held to be constitutionally protected property interests share the same characteristics as taxicab licenses and their assignability. It would certainly be incongruous to conclude that a horse trainer's license is a protected property interest under the fourteenth amendment, as was done in *Barry*, and that a taxicab license and its assignability is not a constitutionally protected property interest. See *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 431, 71 L. Ed. 2d 265, 275, 102 S. Ct. 1148, 1155.

Moreover, the facts under which the taxicab license in the present case was issued and assigned support the conclusion that the taxicab license and its assignability is a constitutionally protected property interest. Here, the City of Chicago expressly limited the number of taxicab licenses to be issued and expressly provided that they were assignable. Also, the City of Chicago provided standard forms and applications for the assignment of the taxicab licenses, and the assignment forms and applications had to be filed with and approved by the City of Chicago. The City of Chicago never rejected an application for assignment. Under the circumstances, for more than 20 years, the City of Chicago, pursuant to its ordinance, plainly fostered and participated in the assignment of the taxicab licenses. In effect, the City of Chicago created for its citizens a public market place for the assignment of its taxicab licenses. Thus, the taxicab licenses in reality became more than just mere personal permits granted by a governmental body to a person to pursue some occupation or to carry on some business subject to regulation under the police power. (See Black's Law Dictionary 829 (5th ed. 1979).) In a functional sense, the taxicab

licenses embraced the essence of property in that they were securely and durably owned and marketable. See *Flower Cab Co. v. Petitte* (N.D. Ill. 1987), 658 F. Supp. 1170, 1175, quoting *Reed v. Village of Shorewood* (7th Cir. 1983), 704 F.2d 943, 948.

Plainly, the characteristics which the City of Chicago, itself, gave to its taxicab licenses and their assignability are all consistent with an individual entitlement which cannot be removed except for cause or with just compensation. We therefore conclude that the taxicab license in the present case is constitutionally protected property and its assignability is an important aspect in the assemblage of rights that comprise that property interest. (*Flower Cab Co. v. Petitte* (N.D. Ill. 1987), 658 F. Supp. 1170, 1176.) Thus, we hold that the taxicab license and its assignability is a constitutionally protected property interest pursuant to the fourteenth amendment.

The City of Chicago next contends that even if an assignable taxicab license constitutes property, the City of Chicago may reorder the property rights of its citizens if it chooses, even depriving citizens of its property. We, of course, do not dispute the City of Chicago's right to amend existing legislation. Also, we recognize that a legislative body may elect not to confer a property interest as it chooses. A legislative body, however, may not authorize the deprivation of such an interest, once conferred, without appropriate constitutional safeguards. Thus, what the City of Chicago did here must be analyzed in constitutional terms.

■ One constitutional limitation on the right of a legislative body to amend or repeal legislation is a prohibition against affecting vested property rights without due process and just compensation. (See *Sagittarius, Inc. v. Village of Arlington Heights* (1980), 90 Ill. App. 3d 401, 413 N.E.2d 90.) Here, when the City of Chicago adopted the taxicab ordinance in 1963 and issued taxicab licenses which were assignable pursuant to the ordinance, it created and conferred property rights in the taxicab licenses which accrued to those persons who purchased the taxicab licenses as assignees and were approved by the City of Chicago. Thus, when the City of Chicago amended the taxicab ordinance in 1982 by summarily precluding those persons already having an assignable property interest in taxicab licenses from being able to assign their property interests, the City of Chicago's action constituted a taking of property without due process and without just compensation. We therefore reject the City of Chicago's contention.

■ The City of Chicago also contends that the plaintiff waived her due process argument because the citation petition "contains no allegations whatsoever concerning the purported lack of notice or in-

dicating what the city did or did not do to afford notice to cab drivers and other interested persons prior to the passage of the ordinance." The City of Chicago's contention is without merit because the citation petition plainly alleges that the 1982 ordinance is unlawful and deprives the plaintiff of her property rights without due process of law, and that it "abrogates one's property rights without notice and an opportunity for a hearing," and "it allows the taking of one's property without just compensation." In addition, the citation proceeding makes factual allegations that are sufficient to support the plaintiff's theory. In ruling upon a motion to dismiss, the court should deny the motion unless it clearly appears that no set of facts can be proved which would entitle the plaintiff to recover. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61, 466 N.E.2d 224, 226.) Here, there is a set of facts alleged which, if proved, would entitle the plaintiff to recover. There is no issue of waiver by the plaintiff involved in either the trial court or on appeal. The City of Chicago's contention is therefore untenable.

■ Next, we note that the transcript of the hearing before the trial court reflects the apparent reason that the trial court dismissed the citation petition. The trial court felt that because Zawistowski paid the annual fee for renewal of his taxicab license for the years 1983 and 1984, neither he nor his estate could challenge the constitutionality of the 1982 ordinance. We disagree.

As a result of the 1982 ordinance, Zawistowski's taxicab license was no longer marketable, and not usable by him unless he paid the annual renewal fee. Thus, if he had not paid the annual renewal fee he would have voluntarily relinquished the taxicab license and use of his existing property interest in the taxicab license. If that had occurred, however, neither he nor his estate would have had standing to challenge the constitutionality of the 1982 ordinance. (See *County Court v. Allen* (1979), 442 U.S. 140, 154-55, 60 L. Ed. 2d 777, 790, 99 S. Ct. 2213, 2223[1]; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 569, 376 N.E.2d 1382, 1385; *People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 168-69, 560 N.E.2d 303, 305-06.) On the other hand, ac-

---

[1]In *County Court*, the court stated: "A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." (442 U.S. at 154-55, 60 L. Ed. 2d at 790, 99 S. Ct. at 2223.) In the present case, if Zawistowski had relinquished his taxicab license by not renewing it, the unconstitutionality of the 1982 ordinance would not have an adverse impact on his own rights or those of his estate and as a corollary, neither he nor his estate would have standing to challenge the constitutionality of the ordinance.

cording to the trial court, because Zawistowski paid the annual renewal fee he voluntarily relinquished his existing property interest in the taxicab license and neither he nor his estate could challenge the constitutionality of the 1982 ordinance. If both of these options are true, Zawistowski had a Hobson's choice. If both of the options are true, it would also constitute a perversion of the law that is as strange and unfair as one can imagine. Plainly, the City of Chicago cannot whipsaw its citizens into "voluntarily" choosing one of two means by which they will be divested of an existing property interest without due process or just compensation.

We therefore conclude that by renewing his taxicab license for 1983 and 1984, Zawistowski maintained rather than waived his right and the right of his estate to challenge the constitutionality of the 1982 ordinance. The City of Chicago apparently recognizes that there is no merit to the position taken by the trial court since on appeal it does not defend or even mention the reason expressed by the trial court as to why the citation petition was dismissed. It follows that the reason expressed by the trial court for dismissing the citation proceeding is without merit, and also waived by the City of Chicago.

Finally, in a footnote on the last page of its brief, the City of Chicago states: "It also appears that plaintiffs' citation petition, which was filed almost seven years after §28—8 was enacted, is barred by the statute of limitations." This is the first and only time and place that the City of Chicago makes reference to an alleged statute of limitations defense, which plainly could have been raised in the trial court as part of its section 2—615 motion to dismiss. No affidavits would have been necessary to raise the alleged statute of limitations defense in the trial court since the date that the citation petition was filed is of record and plainly stamped on the citation petition itself, and a copy of the 1982 ordinance was attached to the citation petition as an exhibit. The exhibit expressly shows that section 28—8 was passed by the City of Chicago on September 15, 1982. Thus, the statement in the City of Chicago's footnote that it did not raise the alleged statute of limitations defense in the trial court as part of its section 2—615 motion to dismiss because it did not want to file a hybrid section 2—615 and section 2—619 motion is unavailing. See Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619.

This is not a case involving a special limitations period created by a statutory cause of action. The alleged statute of limitations defense, therefore, is a procedural issue and an affirmative defense which must be raised in apt time in the trial court or it is waived. (*Hugley v. Alcaraz* (1986), 144 Ill. App. 3d 726, 494 N.E.2d 706;

*Phillips v. Elrod* (1985), 135 Ill. App. 3d 70, 478 N.E.2d 1078; see generally *Rallo v. The Crossroads Clinic, Inc.* (1990), 206 Ill. App. 3d 676, 685, 565 N.E.2d 15, 20; *Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 315, 546 N.E.2d 524.) In addition, our supreme court has stated on numerous occasions that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.) We therefore conclude that the City of Chicago may not raise an alleged statute of limitations defense for the first time on appeal. We give no consideration to the footnote in the City of Chicago's brief.

Under the circumstances, we conclude that the citation petition sufficiently states a cause of action upon which relief can be granted and that the trial court erred in granting the City of Chicago's motion to dismiss.

Accordingly, the order of the trial court is reversed and the case is remanded for further proceedings consistent with what we have stated in this opinion.

Reversed and remanded.

CERDA, P.J., and WHITE, J., concur.