**M & Z CAB CORPORATION, Marina Bay Cab Co., Inc., Renegade Cab Co., Eight, Illinois corporations, and Miljohn C. Zeravich, Petitioners,**

v.

**CITY OF CHICAGO, Mayor's Licensing Commission and the Chicago Department of Consumer Services, Respondents.**

No. 98 C 60.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 24, 1998.

Alexander S. Vesselinovitch, Jeffery J. Wawrzyniak, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Petitioners.

Robert T. Shannon, Assistant Corporation Counsel, Special Prosecutions, Anita K. Modak–Truran, Chief Assistant Corporation, Special Prosecutions, Chicago, IL, for Respondents.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

Plaintiffs, M & Z Cab Corporation, Marina Bay Cab Co., Inc., Renegade Cab Co., Eight, and Miljohn C. Zeravich filed this administrative review action against defendants, the City of Chicago, the Chicago Mayor's Licensing Commission, and the Chicago Department of Consumer Services, seeking to reverse the decision of the Mayor's Licensing Commission to revoke three taxicab medallions pursuant to the Chicago Municipal Code. The defendants have filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. Proc. 12(b)(6). For the following reasons, defendants' motion is granted.

## BACKGROUND

The plaintiffs' well-pleaded allegations, which we presume are true and view in a light most favorable to the plaintiffs for purposes of this motion, are as follows. Plaintiff Miljohn C. Zeravich ("Zeravich") is a resident of the City of Chicago, Illinois, and is currently the sole shareholder of M & Z Cab Corporation, Marina Bay Cab Co., Inc., and Renegade Cab Co., Eight. The three medallions at issue in this litigation were obtained by Zeravich on behalf of the three corporate defendants. Zeravich obtained medallion number 2892 TX on behalf of Marina Bay Co. on February 27, 1964. On July 1, 1990, Zeravich obtained medallion number 874 TX on behalf of M & Z Cab Corporation and, on or about December 15, 1992, number 5244 TX on behalf of Renegade Cab Company, Eight.

The events which resulted in the present litigation began to unfold on February 13, 1997 when the Mayor's Licensing Commission mailed a notice of hearing to plaintiffs informing them that an administrative hearing would be held on March 12, 1997 concerning a proposed revocation of their licenses. This notice informed plaintiffs of the time and location of the hearing and that defendants sought to revoke the licenses pursuant to City of Chicago Municipal Code § 9–112–270. Section 9–112–270 provides that a license shall be revoked if the licensee is convicted of a felony or crime of moral turpitude. The notice set forth the justification for the purported revocation and advised plaintiffs of their right to be represented by counsel, produce witnesses, and introduce evidence on their behalf at the hearing.

Six days after the notice of hearing was mailed to plaintiffs, Zeravich resigned as an officer or director of the three licensee corporations and attempted to sell the medallions and his stock in the corporations. In order to effectuate this transfer, Zeravich presented completed transfer applications to the Department of Consumer Services. The Department of Consumer Services denied the proposed transfer on the basis that the medallions were on "hold" pending the conclusion of the revocation hearing. The defen-

dants deprived plaintiffs of their ability to assign, transfer or sell the medallions prior to any hearing or proceeding on the merits of the hold or the suspension. Despite the hold placed on the medallions, defendants renewed the medallion issued to Renegade Cab Co.

The revocation hearing took place on September 10, 1997 before Deputy License Commissioner Nicholas Comerford. At the hearing, plaintiffs stipulated that Zeravich had been convicted of a felony while he was president of the defendant corporations. In support of their position, plaintiffs had an opportunity to present evidence, cross examine witnesses, and submit a written memorandum of law. Approximately one month later, the Mayor's Licensing Commission issued an order revoking the three medallions issued to plaintiffs. The medallions were revoked pursuant to the Chicago Municipal Code which provides that a license shall be revoked if the licensee shall be convicted of a felony or any criminal offense involving moral turpitude, or in the case of a corporate licensee, if any officer or director is convicted of a felony and the corporation fails to sever immediately its relationship with the officer or director.

The conviction underlying the revocation was a 1994 federal felony conviction Zeravich received for making a false entry to a governmental agency in violation of 18 U.S.C. § 1001. This conviction was the result of a guilty plea in which Zeravich admitted that he submitted false trip tickets to the Transportation Service Corporation in order to obtain reimbursement for transportation services for handicapped individuals under the Chicago Transit Authority's ("CTA") Special Services Program. As a result of this guilty plea, the court sentenced Zeravich to thirteen months in federal prison, restitution of $8,496 to the CTA, 200 hours of community service, and a $3,000 fine. Shortly before pleading guilty, Zeravich resigned as Secretary of M & Z Cab, Marina Bay Cab, and Renegade Cab.

On November 7, 1997, plaintiffs filed a Petition for Writ of Certiorari/Review of Administrative Proceedings in the Circuit Court of Cook County, Chancery Division seeking to reverse the decision of the Mayor's Licensing Commission. On November 10, 1997, plaintiffs filed an emergency motion seeking to stay the execution of the Order of Revocation. That same day, the Circuit Court denied the motion. On January 7, 1998, defendants properly removed this administrative review proceeding to this court. *See City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (holding that removal is proper for an administrative review action raising federal constitutional claims).

The plaintiffs then amended their complaint alleging that the Chicago Municipal Code sections upon which the revocation was based are unconstitutional on both due process and equal protection grounds. Specifically, in Count I plaintiffs allege that the prehearing hold on the medallions violated their procedural due process and equal protection rights, and that Section 9–112–270 is overly broad and unduly vague. Similarly, in Count II plaintiffs claim that Section 9–112–280 is unduly vague, is not rationally related to a legitimate government interest in violation of the equal protection clause, and the prehearing hold on the medallions violated their procedural due process rights. Finally, in Count III plaintiffs allege that the decision to revoke the medallions should be reversed on the ground that the doctrine of laches bars defendants from revoking the medallions.

## LEGAL STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations liberally, and view the allegations in a light most favorable to the plaintiff. *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.,* 52 F.3d 623, 626–27 (7th Cir.1995). Dismissal is proper only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago,* 3 F.3d

1156, 1159 (7th Cir.1993) (internal quotations omitted).

While the court ordinarily is limited to the allegations contained in the pleadings, it may consider documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits. Fed. R.Civ.P. 10(c). Moreover, the court may take judicial notice of matters of public record including records and reports of administrative agencies. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991); *see also Intermedics, Inc. v. Ventritex, Inc.*, 775 F.Supp. 1258, 1261 (N.D.Cal.1991) ("[f]acts properly held the object of judicial notice in the context of a motion to dismiss under 12(b)(6) include, among others, records and reports of administrative bodies ... items in the record of the case or matters of general public record ... and copies of a document (i.e. a contract) attached to the complaint as an exhibit.") (citations omitted).

## DISCUSSION

### I. Due Process Analysis

The due process claims currently before the court challenge the Chicago Municipal Code provisions at issue on both procedural and substantive grounds. The amended complaint alleges that the Municipal Code violates plaintiffs' procedural due process rights because it does not provide for a hearing before the defendants may place a "hold" on the transfer of the medallions pending the revocation hearing.[1] Plaintiffs also claim that the ordinances at issue violate the due process clause because they are unduly vague and overbroad. We address each of these contentions in turn.

### A. Procedural Due Process

■ The procedural due process analysis requires the court to undertake a two-step inquiry. First, the court must determine whether plaintiffs were deprived of a

1. In the amended complaint, plaintiffs also allege that § 9–112–270 of the Chicago Municipal Code "provided no prior notice or hearing to the convicted licensee before the revocation of licenses may issue." Am. Compl. ¶ 31. As the above analysis demonstrates, the Chicago Municipal Code provides sufficient notice and hearing to a

protected interest in life, liberty, or property. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir.1996). If the plaintiffs were deprived of such an interest, the court must then determine what process was due with respect to that deprivation. *Id.; see also Ledford v. Sullivan*, 105 F.3d 354, 356–57 (7th Cir.1997). Here, defendants concede, and we think correctly, that plaintiffs have a constitutionally protected property interest in the taxicab medallions. *See Boonstra v. City of Chicago*, 214 Ill.App.3d 379, 386, 574 N.E.2d 689, 694, 158 Ill.Dec. 576, 581 (1991) (holding that a taxicab license is a constitutionally protected property interest under Illinois law); *see also Flower Cab Co. v. Petitte*, 658 F.Supp. 1170, 1175 (N.D.Ill.1987) (same).

■ The issue then becomes what procedural safeguards are constitutionally required before defendants can place a hold on the transfer of a medallion pending the completion of the revocation process. The concept of due process is flexible and "varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). Thus, "[t]he procedural protections required by the Due Process Clause must be determined with reference to the rights and interests at stake in the particular case." *Washington v. Harper*, 494 U.S. 210, 229, 110 S.Ct. 1028, 1040–41, 108 L.Ed.2d 178 (1990). Generally, due process entitles an individual to notice and a hearing before the state may permanently deprive him of property. *See e.g., Miller v. City of Chicago*, 774 F.2d 188, 191 (7th Cir. 1985) (noting that "pre-deprivation notice and hearing represent the norm"), *cert denied*, 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986).

■ While the Constitution ordinarily requires a pre-deprivation notice and hearing, there are circumstances in which a later notice and hearing is constitutionally sufficient. In determining what process is required in a

licensee before its licenses may be revoked. Nonetheless, in their memorandum in opposition to the instant motion to dismiss, plaintiffs represent that their procedural due process argument is limited to the pre-hearing "hold" placed on the transfer of the medallions. (Pl.s' Mem. Opp'n at 6).

particular context or a given set of circumstances, the court must weigh the following three factors: (1) the private interest that is affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burden that additional or substitute procedural requirements would entail. *Miller,* 774 F.2d at 191 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

■ The pre-hearing "hold" that defendants placed on the medallions prevented plaintiffs from transferring the medallions pending the revocation hearing. The City of Chicago has expressly limited the number of taxicab licenses, § 9–112–320, and has provided that a licensee may freely assign its license to any person qualified to hold such a license under the provisions of the Municipal Code. § 9–112–320(f). In light of these provisions, the taxicab licenses are more than just mere personal permits to operate a taxicab in the City. *Boonstra,* 214 Ill.App.3d at 386–87, 158 Ill.Dec. 576, 574 N.E.2d 689. The taxicab licenses embrace, in a functional sense, "the essence of property in that they [are] securely and durably owned and marketable." *Id.* at 387, 158 Ill.Dec. 576, 574 N.E.2d 689. Consequently, the assignability of the medallions is "an important aspect in the 'bundle of rights' that comprises the property in question." *Flower Cab Co.,* 658 F.Supp. at 1176.

While depriving a licensee of his right to transfer a taxicab medallion pending the completion of the revocation process deprives that person of an important constitutionally protected property interest, the deprivation in this case was temporary in nature. The amended complaint alleges that plaintiffs were unable to transfer the medallions at issue from February 19, 1997 until the order of revocation was issued on October 14, 1997. During this period, plaintiffs were allowed to operate taxicabs under the medallions. Thus, the hold placed on the medallions was a temporary restraint on one aspect of plain-tiffs' ownership interest. Nonetheless, this temporary or partial impairment of the ability of plaintiffs to transfer the medallions triggers due process concerns, *Connecticut v. Doehr,* 501 U.S. 1, 12, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991), and must be weighed against the governmental interests at stake and the risk of an erroneous deprivation.

The pre-hearing hold defendants placed on the transfer of the medallions serves an important government interest. As defendants correctly note, the pre-hearing hold is necessary to maintain the status quo during the pendency of the revocation hearing. The ability of a licensee to transfer a medallion that is the subject of a revocation hearing circumvents the rationale for the revocation process, namely, to determine whether the licensee has any rights to transfer. Thus, absent such a procedural mechanism to maintain the status quo, a licensee who clearly has violated the Municipal Code may transfer a medallion thereby making the revocation hearing a meaningless exercise. The defendants have a legitimate interest in ensuring that those who violate the ordinances of the City of Chicago are punished and, in doing so, deter others from similar conduct in the future.

Further, prohibiting the transfer of a medallion pending the completion of the revocation process is consistent with the overall purpose of the Municipal Code. The Municipal Code, through the ordinances at issue, represents a rational government decision to protect those who rely on the taxicab industry from the dangers associated with convicted felons. When, as here, an officer or director of a medallion holding corporation has been convicted of a felony and fails to sever immediately his or her relationship with the corporation, the City of Chicago has a substantial government interest in enforcing the ordinances. This interest would be thwarted if those who violated the ordinances were permitted to transfer the medallion to a buyer before the City of Chicago could determine whether the medallion holder had any rights to transfer. For these reasons, the defendants had a significant interest in prohibiting plaintiffs from transferring the medallions.

In addition to these government interests, the risk of an erroneous deprivation is minimal here. The Chicago Municipal Code provides that a licensee is entitled to five days written notice of the hearing and "an opportunity to appear and defend" against the proposed revocation. § 4–4–280. A licensee dissatisfied with the result of this hearing may seek review of the decision in state court by filing a common law writ of certiorari. 735 ILCS 5/3–101 *et seq.* Perhaps more importantly, the decision to revoke or suspend a medallion pursuant to Sections 9–112–270 or 9–112–280 is based on a certified copy of the felony conviction. *See e.g., Burgess v. Ryan,* 996 F.2d 180, 183 (7th Cir.1993) (finding risk of error slight when revocation of driver's license based on report of conviction), *cert. denied,* 510 U.S. 1092, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994). In light of the procedural safeguards and the fact that the revocation was based on reliable public documents, the risk of an erroneous deprivation in this case is slight.

Under these circumstances, we cannot conclude that defendants were constitutionally required to provide plaintiffs a hearing before placing a hold on the medallions pending the revocation hearing. The City of Chicago has a legitimate interest in placing a pre-hearing hold on a medallion against which revocation proceedings have been instituted. The government interests outlined above outweigh the burden placed on the licensee who is still able to operate the taxicabs under the medallions during the revocation process. Moreover, the procedural safeguards outlined in the Municipal Code, the ability to file a common law writ of certiorari for judicial review of the revocation decision, and the fact that the revocation is based on a certified copy of a conviction indicate that the risk of an erroneous deprivation is minimal. Plaintiffs have failed to identify any risk of erroneous deprivation that would be alleviated by requiring a hearing before defendants may place a hold on a medallion. Accordingly, plaintiffs' procedural due process claims are dismissed.

## B. Vagueness and Overbreadth

■ Next, plaintiffs allege that Sections 9–112–270 and 9–112–280 are impermissibly vague and, therefore, are unconstitutional under the due process clause. The Supreme Court has long recognized that a legislative enactment "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) (citations omitted). Therefore, the Constitution requires that a legislative enactment provide people of ordinary intelligence fair warning of the prohibited conduct in a manner that does not encourage arbitrary and discriminatory enforcement. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972); *Holman v. Page,* 95 F.3d 481, 487 (7th Cir.1996), *cert. denied,*— U.S. ——, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997).

■ In determining whether a legislative enactment is unconstitutionally vague, the court must acknowledge that the Constitution does not require, nor does the English language lend itself to, mathematical precision. *Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2913–14, 37 L.Ed.2d 830 (1973) (noting that "[w]ords inevitably contain germs of uncertainty"). A legislative enactment survives scrutiny under the vagueness doctrine provided its prohibitions "are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Id.* Significantly, an ordinance that does not implicate constitutionally protected conduct is unconstitutional only if it is impermissibly vague in all of its applications. *Lawline v. American Bar Ass'n,* 956 F.2d 1378, 1386 (7th Cir.1992), *cert. denied,* 510 U.S. 992, 114 S.Ct. 551, 126 L.Ed.2d 452 (1993).

■ When, as here, a party asserts a claim of unconstitutional vagueness outside the First Amendment context, the party must demonstrate that the legislative enactment is vague as applied to its own conduct. In other words, "vagueness challenges ... which do not involve First Amendment freedoms must be examined in the light of the

facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). "A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Thus, a party "who engages in some conduct that is clearly proscribed" by the legislative enactment does not have standing to argue that the law is vague as applied to the hypothetical conduct of third parties. *Id.*

■ In the present case, while the amended complaint alleges that Sections 9–112–280 and 9–112–270 have potentially vague application to others, it does not demonstrate that these ordinances are vague as applied to plaintiffs' conduct. The amended complaint alleges that in October 1994 Zeravich pled guilty and was convicted of a felony in which he obtained unlawfully $8,496 for services provided to the CTA. In light of this conviction, the Municipal Code required Zeravich to sever immediately his relationship with the corporate licensees. Nonetheless, Zeravich waited until six days after receiving notice of the revocation hearing to resign as an officer or director of the corporate licensees. A corporate director or officer who is convicted of a felony and remains in that position for more than two years clearly falls within the purview of these ordinances. Therefore, plaintiffs lack standing to assert that the outermost boundaries of these provisions may be imprecise.

■ Nevertheless, even if plaintiffs had standing to raise the vagueness challenges, we find that the requirements of the ordinances at issue are clear to a person of ordinary intelligence. The Municipal Code provides that a license shall be revoked "if any licensee shall be convicted of a felony or any criminal offense involving moral turpitude," § 9–112–270, and in the case of a corporate licensee, "if any officer or director shall be convicted of a felony, unless the licensee shall sever its relationship with any such officer or director immediately upon his conviction ...." § 9–112–280. Plaintiffs argue that the terms "felony," "sever," and "immediately" render these provisions unconstitutionally vague. (Pls' Mem. Opp'n at 9–11).

We begin with plaintiffs' contention that the term "felony" renders the challenged ordinances unconstitutionally vague. In support of this contention, plaintiffs argue that the ordinances at issue are vague because they fail to "define or make a distinction between the types of felonies that may be at issue: e.g. federal or state, or the underlying type of crime or sentence." (*Id.* at 10). We disagree. The term "felony" in its broadest sense includes any offense that is defined as a felony under either state or federal criminal law. While the ordinances could be more specific by defining or enumerating the specific offenses to which they apply, the ordinances need not replace the generic with the more precise or provide a laundry list of offenses to be constitutional. Thus, we find that the term "felony" provides sufficient notice to a person of ordinarily intelligence as to what the ordinances prohibit.

We reach a similar conclusion with respect to the terms "sever" and "immediately." While these terms are somewhat general, the term "sever" is defined as "to separate" and the term "immediately" is defined as "without delay." Webster's New World Dictionary (3d Ed.1988). These definitions, when viewed in the context of the Municipal Code, make it clear that Section 9–112–280 forbids a corporate licensee from having a convicted felon serve as an officer or director and requires the corporation to remove that person from office as quickly as possible in the particular case. Under these circumstances, we find that the requirements of the ordinances are well within the grasp of a person of ordinary intelligence and, at the very least, are not impermissibly vague in all of their applications. Accordingly, the vagueness challenges set forth in the amended complaint are dismissed.

■ Finally, plaintiffs claim that Section 9–112–280 is overly broad. The overbreadth doctrine permits a party to argue that a statute reaching a substantial amount of protected activity should be struck down in its entirety, even if the statute could constitutionally be applied to the litigant. *See*

*e.g., Gooding v. Wilson,* 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408 (1972). The overbreadth doctrine is allowed only in the First Amendment context because of "the transcendent value to all society of constitutionally protected expression." *Id.* at 521, 92 S.Ct. 1103. Consequently, the Supreme Court has yet to recognize the overbreadth doctrine outside the First Amendment context. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987) (noting that "we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment"). For this reason, plaintiffs' overbreadth argument is dismissed.

In conclusion, we find that, because plaintiffs engaged in conduct to which the ordinances clearly apply, plaintiffs lack standing to mount a vagueness challenge to the ordinances at issue. Nonetheless, even if plaintiffs did have standing, we believe that the ordinances at issue satisfy due process by providing sufficient notice of what is required. Finally, we find that, because the issues currently before the court do not implicate First Amendment concerns, plaintiffs' claim that Section 9–112–280 is overbroad is without merit. Accordingly, the vagueness and overbreadth challenges in Counts I and II of the amended complaint are dismissed.

## II. Equal Protection Analysis

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protections of the laws." U.S. Const., Amend. 14, § 1. When, as here, the equal protection challenge does not involve a suspect class or a fundamental right, the appropriate standard of review is the rational basis test. *University Prof'ls of Illinois, Local 4100 v. Edgar,* 114 F.3d 665, 667 (7th Cir.1997). Under this standard, the party challenging the rationality of legislative choices must establish that no conceivable basis exists for the regulation. *FCC v. Beach Communications Inc.,* 508 U.S. 307, 314–15, 113 S.Ct. 2096, 2101–02, 124 L.Ed.2d 211 (1993). The challenged legislation satisfies the rational basis test so long as it does not manifest "a patently arbitrary classification, utterly lacking in rational justification." *Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975) (internal quotations omitted).

In the present case, defendants have advanced a rational argument, or "conceivable basis," for the medallion revocation standards outlined in Sections 9–112–270 and 9–112–280. Defendants assert that the revocation process is necessary to ensure the safety of those who use taxicabs in the City of Chicago. According to defendants, "[h]undreds of taxicabs operate within the City day and night, and members of the public must essentially place a blind trust in the integrity of the drivers and their driver's ability to safely transport them to their destinations." (Defs.' Mem. Supp. Mot. Dismiss at 8–9). Thus, defendants maintain that prohibiting convicted felons from holding a license or from being an officer or director of a corporate licensee protects passengers, promotes driver safety, and ensures that the taxicab industry does not attract a criminal element.

While apparently conceding that the City of Chicago has a legitimate interest in regulating taxicab drivers, plaintiffs claim that the further regulation of officers and directors in the corporate structure has no rational basis. (Pls.' Mem. Opp'n at 12). We disagree. The City has a strong interest in protecting the public from those with criminal propensities and, while taxicab drivers likely pose the greatest danger, it is certainly reasonable for the City to conclude that events occurring at the corporate level may have an effect on taxicab drivers and passengers. Similarly, because the City may rationally regulate drivers who operate under the medallions, we conclude that the City has a rational basis for regulating those who actually control the use of the corporate medallions. In short, as defendants correctly note, the interest of the City to regulate the taxicab industry is not confined to events transpiring between passengers and drivers.

Likewise, plaintiffs claim that Section 9–112–280 is not rationally related to the interest of protecting the public from those with criminal propensities because it does not similarly regulate others connected with the corporate licensee. Specifically, plaintiffs com-

plain that the ordinance lacks a rational basis because it "allows a murderer, rapist or armed robber to own 100% of the shares of a corporate licensee and to operate the business as its general manager." (*Id.* at 11). We disagree. In regulating the taxicab industry, the City of Chicago "need not strike at all evils at the same time." *New Orleans v. Dukes,* 427 U.S. 297, 305, 96 S.Ct. 2513, 2517–18, 49 L.Ed.2d 511 (1976) (internal quotations omitted). Thus, the City may alleviate the problem of convicted felons serving as corporate officers and directors and deal with others in the corporate structure later. In other words, Section 9–112–280 is "not invalid under the Constitution merely because it might have gone farther than it did." *Id.* at 305, 96 S.Ct. 2513 (internal quotations omitted). Accordingly, because Section 9–112–280 is rationally related to the legitimate objective of protecting the public, the fact that it does not apply to corporate managers or shareholders is constitutionally irrelevant.

In reaching this conclusion, we acknowledge that the overall objective of the City of Chicago in ensuring that the taxicab industry does not attract a criminal element would be advanced if Section 9–112–280 also applied to managers, shareholders, and others in the corporation. Unfortunately for plaintiffs, "perfect logical consistency is not essential" under the equal protection clause. *Schanuel v. Anderson,* 708 F.2d 316, 320 (7th Cir.1983). In enacting the Municipal Code, the City "must necessarily engage in a process of line-drawing," and it chose to draw the line with corporate officers and directors. *Beach Communications,* 508 U.S. at 315, 113 S.Ct. 2096 (internal quotations omitted). "The fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* at 315–16, 113 S.Ct. 2096 (internal quotations omitted). While the Municipal Code may not be entirely consistent, this court concludes that the proscriptions the legislature did draw are rational.

Finally, plaintiffs claim that the ordinances at issue lack a rational basis because they are not limited to felons convicted of crimes related to public safety or transportation. (Pls.' Mem. Opp'n at 12). In making this argument, plaintiffs ignore the fact that there is a nexus between Zeravich's 1994 federal felony conviction and public safety or transportation. The conviction Zeravich received was based on his submission of false trip tickets to the Transportation Service Corporation. Zeravich submitted these false trip tickets in order to obtain reimbursement for transportation services for handicapped individuals under the CTA's Special Services Program. While plaintiffs apparently take a narrow view of public safety or transportation, we conclude that the problem of common carriers in the City of Chicago overcharging its customers is related to public safety or transportation.

Additionally, as previously discussed, defendants have a legitimate interest in protecting the public from those with criminal propensities. While this interest is perhaps at its greatest with respect to crimes relating to public safety or transportation, we find that the ordinances need not make distinctions based on the nature of the underlying felony to promote that interest. *See e.g., Baer v. City of Wauwatosa,* 716 F.2d 1117, 1125 (7th Cir.1983) (rational basis to deny felons a license to sell guns); *Schanuel,* 708 F.2d at 319–20 (rational basis to deny felons a private detective and security license); *Darks v. City of Cincinnati,* 745 F.2d 1040, 1043 (6th Cir.1984) (rationale basis to deny felons a license to operate a dance hall).

In conclusion, we find that the ordinances at issue and the pre-hearing hold placed on the transfer of the medallions are rationally related to the City's legitimate interest in protecting the public from those with criminal propensities. The taxicab industry has a direct effect on the safety and welfare of the City, and "the members of the public who utilize them must place almost a blind trust in the fitness of their equipment and the competence of their drivers." *City of Chicago v. Vokes,* 28 Ill.2d 475, 480, 193 N.E.2d 40, 44 (1963). The ordinances at issue are rationally related to these legitimate interests. Accordingly, the equal protection claims in Counts I and II are dismissed.

## III. Takings Claim

In their supplemental brief opposing defendants' motion to dismiss, plaintiffs argue

that defendants deprived them of property without just compensation in violation of the Fifth Amendment. Specifically, plaintiffs claim that defendants, by placing a hold on the medallions until the Mayor's Licensing Commission issued an order of revocation, deprived plaintiffs of $120,000 which represents the fair market value of the medallions they had arranged to sell to a qualified buyer. Defendants counter that plaintiffs have failed to plead adequately a takings claim and, in any event, such a claim is without merit.

■■■ We first determine whether plaintiffs' taking claim is properly before the court. A brief in opposition to a motion to dismiss ordinarily cannot serve to amend the complaint by expanding on the factual allegations contained therein. *See e.g., Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). While plaintiffs' amended complaint does not specifically identify a violation of the takings clause, this omission is not necessarily fatal because a "plaintiff can plead the right legal theory, the wrong legal theory or even no legal theory at all without impacting on the complaint's sufficiency." *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.,* 933 F.Supp. 1381, 1384 n. 2 (N.D.Ill.1996). Rather, our focus on a motion to dismiss is whether "relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992).

■■■ Therefore, the structure of the amended complaint into two counts, or legal theories, does not prohibit plaintiffs from asserting a takings claim in their response brief provided it is supported by the factual allegations set forth in the amended complaint. In the amended complaint, plaintiffs allege that Zeravich resigned as an officer or director of the corporate licensees and attempted to sell the medallions. Plaintiffs allege that Zeravich presented completed transfer applications to the Department of Consumer Services which were denied pending the completion of the revocation process. Plaintiffs further allege that, following the revocation hearing, defendants issued an order of revocation revoking the medallions that plaintiffs had attempted to transfer to a qualified purchaser. Construing these allegations liberally, as we must, we find that the amended complaint sufficiently alleges a taking.

■■■ Nevertheless, the defendants' refusal to approve the transfer applications during the pendency of the revocation hearing does not constitute an unconstitutional taking. The hold placed on the medallions was of limited duration and only affected plaintiffs' ability to transfer the medallions. Meanwhile, plaintiffs remained free to operate the taxicabs under the medallions. While the ability to transfer is an important property right, we cannot conclude that briefly suspending this right in order to address an alleged violation of the ordinance constitutes an unconstitutional taking. A licensee who obtains a favorable decision is entitled to transfer his medallions provided he is otherwise in compliance with the ordinances. While there may be a diminution in value of the medallion during the hold period, "such an effect is too incidental to amount to a taking for which compensation is owed under the Constitution." *Peterman v. Coleman,* 764 F.2d 1416, 1419 (11th Cir.1985).

Perhaps more importantly, plaintiffs had sufficient notice of the conditions under which their medallions may be revoked. The Municipal Code provides that "[t]he mayor shall have the power to ... revoke any license issued under the provisions of this code ... if he determines that the licensee shall have violated any of the provisions of this code or any of the statutes of this state." § 4–4–280. When Zeravich failed to sever immediately his relationship with the corporate licensees following his felony conviction, plaintiffs were in violation of the Municipal Code which subjected their medallions to the revocation process. Once the defendants concluded that plaintiffs might have violated the Municipal Code, the Commissioner, who is vested with authority to grant or deny transfer applications, necessarily possessed the power to place a temporary hold on the transfer of the medallions pending the completion of the pending revocation hearing. *See* § 9–112–320(f)(1).

■ There is no evidence in the record, nor do plaintiffs allege, that these revocation standards were not in existence at the time plaintiffs acquired the medallions. It is well settled that property which is acquired, generated, and developed within a preexisting regulatory scheme which subjects the property to the deprivation complained of cannot constitute a taking provided the regulations are rationally related to a legitimate government interest. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1007–08, 104 S.Ct. 2862, 2875, 81 L.Ed.2d 815 (1984) (finding no taking where party was on notice of the conditions under which property interest may be affected); *see also NL Industries, Inc. v. United States* 12 Cl.Ct. 391, 400 (1987) (finding no taking when regulatory action affects property that is acquired while the regulatory system is in effect), *aff'd,* 839 F.2d 1578 (Fed.Cir.), *cert. denied,* 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 41 (1988). For this reason, plaintiffs cannot assert successfully an unconstitutional taking.

For all of the foregoing reasons, plaintiffs' Fifth Amendment takings challenge to the hold and revocation of their medallions is dismissed.

## IV. Administrative Review Claim

In Count III of the amended complaint, plaintiffs seek a reversal of the order issued by the Mayor's Licencing Commission revoking the three taxicab medallions. The crux of plaintiffs' administrative review claim is that the City of Chicago continued to renew the medallions and did not decide to institute revocation proceedings until more than two years after Zeravich was convicted for making a false entry to a governmental agency. It follows, the argument continues, that the doctrine of laches bars the City from revoking the medallions at issue.

The review of the decision of the Mayor's Licensing Commission is governed by the Illinois Administrative Review Law, 735 ILCS 5/3–101 *et seq.,* which provides that an agency's findings of fact on review "shall be held to be prima facie true and correct." 735 ILCS 5/3–110. The scope of review in an administrative review action is limited to whether the agency's findings are against the

manifest weight of the evidence. *Merrifield v. Illinois State Police Merit Bd.,* 294 Ill. App.3d 520, 528, 691 N.E.2d 191, 198, 229 Ill.Dec. 255, 262 (1998). A finding is against the manifest weight of the evidence when an opposite conclusion is clearly evident from the record or the findings of the agency are unreasonable, arbitrary, and not based upon any of the evidence. *Id.* In making its determination, the court is limited to the record and cannot receive "new or additional evidence" not presented to the administrative agency. 735 ILCS 5/3–110.

■ Plaintiffs seek to reverse the decision of the Mayor's Licensing Commission on the ground that the doctrine of laches bars the City of Chicago from revoking the medallions because the City continued to renew the medallions following Zeravich's conviction and waited until February 13, 1997 to institute revocation proceedings. The equitable doctrine of laches bars an action when, because of delay in bringing suit, a party has been misled or prejudiced or has taken a course of action different from what the party otherwise would have taken. *Senese v. Climatemp, Inc.,* 289 Ill.App.3d 570, 578, 224 Ill.Dec. 705, 711, 682 N.E.2d 266, 272 (1997). The application of the doctrine of laches is within the discretion of the trial court and, at bottom, requires the court to consider whether a party failed to exercise due diligence in protecting its rights. *Baylie v. Swift & Company,* 283 Ill.App.3d 421, 430, 670 N.E.2d 772, 779, 219 Ill.Dec. 94, 101 (1996).

In the present case, plaintiffs have not cited, nor have we discovered, any portion of the administrative record that supports the notion that the City of Chicago failed to exercise due diligence in revoking the medallions. Before ever reaching the question of due diligence, however, plaintiffs have the burden to plead and prove that the City had prior knowledge of the facts giving rise to its claim. *Senese,* 289 Ill.App.3d at 578–79, 224 Ill.Dec. 705, 682 N.E.2d 266. Presumably, this would require plaintiffs to present some evidence that the City knew that Zeravich had been convicted of a felony and, nonetheless, delayed in instituting revocation proceedings. Plaintiffs could satisfy this burden by establishing that Zeravich informed the

City of his conviction or that the City otherwise received notice of the conviction. Nonetheless, it is undisputed that Zeravich did not notify the City of his conviction, and there is no allegation that the City was otherwise aware of the conviction.

■ In response, plaintiffs argue that the instant motion to dismiss should be denied on the issue of laches because there is an "obvious question of fact about when the City first got notice of Zeravich's conviction." (Pls.' Mem. Opp'n at 14). This argument misconstrues the nature and scope of an administrative review action. As previously noted, this court is limited to the administrative record and the findings of fact contained therein and cannot receive "new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency." 735 ILCS 5/3–110. We find that there was sufficient evidence before the Mayor's Licensing Commission that the City did not receive notice of Zeravich's conviction so early as to trigger the doctrine of laches. Accordingly, we cannot conclude that the decision of the Mayor's Licensing Commission was against the manifest weight of the evidence.

In conclusion, plaintiffs have failed to satisfy their burden that the refusal of the Mayor's Licensing Commission to apply the doctrine of laches against the City was against the manifest weight of the evidence. Accordingly, we dismiss Count III of the amended complaint.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss the amended complaint is granted.

It is so ordered.