Kate Frenkel, Appellee, v. Mary A. Ragen (Formerly Mary A. Rogers), Appellant.

Gen. No. 33,797.

Opinion filed April 22, 1930.

FRANK & SHOMBERG, for appellant; MILTON HART, of counsel.

SCHIMBERG & HARRISON, for appellee.

Mr. Justice Scanlan delivered the opinion of the court.

Kate Frenkel, plaintiff, sued Mary A. Ragen (formerly Mary A. Rogers), defendant, in an action of contract. There was a trial by the court and a finding that there was due plaintiff from defendant the sum of $1,187.21. Defendant has appealed from a judgment on the finding.

Defendant was the owner of the premises, 6411 Vernon avenue, Chicago, and on April 19, 1926, she, as vendor, entered into a written agreement for a warranty deed to said premises with Arthur W. Willis and Katherine E. Willis as vendees. The agreement was recorded. On March 3, 1927, defendant sold and conveyed the premises to plaintiff for the sum of $8,386.55, subject to a first mortgage in the sum of $4,500 and subject also to the said agreement. At the same time, for the sum of $3,886.55, defendant assigned to plaintiff the agreement and she also gave plaintiff a chattel mortgage note in the sum of $1,200. On the back of the note appears the following: "Subject to terms of chattel mortgage of even date." The chattel mortgage, also signed by defendant, contained the following provisions:

"It is hereby understood and agreed by and between the mortgagor and the mortgagee, and the legal holder of said chattel mortgage and note, that if and when the sum of Twelve Hundred ($1200.00) Dollars be paid on account of certain real estate purchased by Arthur W. Willis and Katherine Willis, his wife, from Mary A. Rogers, said property being commonly known as number 6411 Vernon Avenue, Chicago, Illinois, as evidenced by a certain written contract dated April 19, 1926, that said chattel mortgage will then be released, surrendered and note described therein duly marked paid, cancelled and surrendered. The said sum of Twelve Hundred ($1200.00) Dollars to be paid over

and above all credits due Arthur W. Willis under the contract as of this date.

. . . And upon default in any of the payments to be made by said Arthur W. Willis and Katherine Willis, then the sum provided for in this mortgage shall at once become due and payable as to such defaulted payments.

. . . Any payment made by Mary A. Rogers shall entitle her to have credit for such payments in and to the Willis contract.''

At the time of the signing of this last instrument there was due from the Willises on the agreement, $4,915.37. From April 1, 1927, to May 1, 1928, the Willises made payments thereon to plaintiff aggregating $901.30. Plaintiff credited $524.38 of this amount to principal and $376.92 to interest. On September 20, 1928, the Willises had failed to pay six monthly items of $85 each that were due. They also owed $157.50 interest on the first mortgage, $249.67 for general taxes, $16.80 for water taxes and $31.25 for special assessments. On September 20, 1928, in consideration of $75 then paid to them by plaintiff, the Willises executed the following assignment on the back of the agreement:

''In consideration of Seventy-five ($75.00) Dollars receipt whereof is hereby acknowledged, the undersigned hereby transfer, assign and convey to Kate Frenkel all our rights and interest of every kind and nature in and to the within Articles of Agreement as provided for on reverse side hereof.

Arthur W. Willis     (Seal)<br>Katherine E. Willis    (Seal)''

On the same date the Willises executed a quit-claim deed to plaintiff to the premises in question. This instrument contained the following:

''(Being their interest acquired by a certain contract dated April 19, 1926, and recorded in the Recorder's office as Doc. #9245310.) ''

Prior to September, 1928, the Willises had collected

the rents for the premises, but thereafter plaintiff collected all rents. On March 8, 1929, plaintiff and her husband conveyed the premises by warranty deed to Newman A. Dumont. This conveyance made no reference to the Willis agreement. On March 12, 1929, Dumont executed a trust deed on the premises to secure his note for $4,000. On March 22, 1929, plaintiff brought the present action, which is based upon the chattel mortgage note of $1,200. The assignment of the agreement by the Willises and the giving of the quit-claim deed by them to plaintiff was without the consent of defendant.

Defendant contends that "the appellant's liability on the chattel mortgage note was that of surety or guarantor;" that plaintiff, by dealing with the principal debtor (the Willises) without the consent of defendant, discharged the latter from her liability under the note given to guarantee the Willis payments, "because (1) the transaction was equivalent to a payment by Willis of his entire agreement; (2) because the contract was extinguished by the joinder of the equitable and legal titles and (3) because the defendant was thereby deprived of her right of subrogation;" that "the sale by Willis of his interest in the premises (the equitable title) to plaintiff, the owner of the legal title, was a payment in full by Willis of his obligations under the articles of agreement for warranty deed as fully as if he had paid in cash or securities. . . . His equitable title in the property . . . was a property right, and his transfer of this right extinguished the agreement and constituted payment thereof. . . . The intention to destroy this agreement is clearly shown by the conveyance of the premises . . . to Dumont, free and clear of the lien of this agreement . . . In her chattel mortgage, plaintiff expressly reserved the right of subrogation in and to the Willis contract."

Plaintiff's position is as follows: "The obligation of defendant on her note to plaintiff secured by her chattel mortgage was not a collateral but direct obligation, and the law of suretyship has no application whatever. . . . When defendant signed the note, she was acting not as Willis' surety, but for herself. . . . She signed the note as part of the consideration, which she gave for what she directly received from plaintiff. At the time she sold the property to plaintiff and executed the note in question, Willis got nothing new. . . . Defendant did not sign for the accommodation or for the benefit of Willis, but for her own benefit and accommodation. Under the law, she was therefore a principal on the note and not a surety."

"The term 'guaranty' or 'guarantee' as it is called by some authorities, . . . is a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some contract or duty in case of the default of another person, who in the first instance is liable for such payment or performance." (28 C. J. 886.)

"A guaranty in its technical and legal sense has relation to some other contract or obligation with reference to which it is a collateral undertaking; it is a secondary and not a primary obligation, and can exist only where there is some principal or substantive liability to which it is collateral." (Ib. 887.)

"The guarantor is not a party to the contract between the principal and the guarantee." (Ib. 888.)

"The guarantor is entitled to stand upon, and cannot be held liable beyond, the strict terms of his contract." (Ib. 947.)

"A guarantor is discharged by operation of law from further liability by any act on the part of the guarantee which extinguishes the principal contract." (Ib. 993.)

By the indorsement upon the back of the note de-

fendant's liability upon the note is conditioned upon the terms of the chattel mortgage, which provides that the note was given to secure the further payment of $1,200 by the Willises under the agreement for a warranty deed, and further provides that when the $1,200 shall have been so paid the "chattel mortgage will then be released, surrendered and note described therein duly marked paid, cancelled and surrendered." It would seem, therefore, that defendant became a guarantor for the payment of the $1,200 by the Willises. In fact, plaintiff so regarded defendant, for her only witness, her husband and agent, testified that "this is the note Mrs. Ragen gave us to *guarantee* payment of the first $1,200." (Italics ours.) One of the major contentions of plaintiff, why the latter should recover in the present case, is that there was no contractual relationship between defendant and the Willises, but there is no merit in this contention.

"The undertaking of the guarantor, as a general rule, is his own separate and independent contract, distinct from that of the principal debtor; the guarantor is not a party to the contract between the principal and the guarantee, and the principal obligor is not a necessary party to the contract of guaranty." (28 C. J. 888.)

On September 20, 1928, the Willises were behind in their payments and under the terms of the agreement plaintiff, had she seen fit to do so, might then have declared them in default and determined the contract and relied upon the liability of defendant under the guaranty. She did not pursue that course but treated the agreement as still in full force and effect. Defendant, under the terms of the mortgage, specifically retained the right of subrogation to the agreement, but plaintiff, without declaring a default, and without determining the contract, and without making any demand or serving any notice upon defendant,

and without her consent, purchased the Willises' interest in the agreement and took from them a quit-claim deed to the property. From that time until March, 1929, plaintiff received rents from the premises and exercised all the rights of ownership in the same. In March, 1929, she transferred the premises to Dumont by a warranty deed that contained no reference to the Willis agreement. From the record it appears that in September, 1928, plaintiff desired to relieve the property of the equitable title of the Willises, and to bring about that result she purchased from the latter the assignment of their rights under the agreement. In so doing she not only extinguished any claim she had against them under the agreement, but she also discharged defendant, the guarantor, from any further liability under the mortgage note. In her dealings with the Willises, plaintiff entirely disregarded the right of defendant to be subrogated to the Willis agreement. She practically concedes this, in her brief, for she claims that Dumont holds the property in trust for her and that he is willing to give defendant "an interest in the property to the extent of the money which she paid on account of the contract, as provided in the chattel mortgage. . . . Let her pay what she promised to pay by her note when she received the plaintiff's money, and then if plaintiff does not give her what she agreed to give her, the defendant will have ground for complaint." While this offer, in the present suit, is but an idle gesture, the confession contained therein is not without significance.

Holding, as we do, that plaintiff has no right, under the law and the evidence, to sue defendant on the $1,200 mortgage note, the judgment of the Municipal Court of Chicago is reversed.

*Reversed.*

BARNES, P. J., and GRIDLEY, J., concur.