BERNARD A. WYSOCKI, d/b/a Welcome Mat Realty, Plaintiff-Appellee, *v.* JOHN BEDROSIAN *et al.*, Defendants-Appellants.

Second District   No. 83—339

Opinion filed May 15, 1984.—Rehearing denied June 12, 1984.

160

Donald C. Stinespring, of Donald C. Stinespring & Associates, of Spring Grove, for appellants.

William I. Caldwell, Jr., of Caldwell, Berner & Caldwell, of Woodstock, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendants appeal from the trial court's entry of summary judgment in favor of plaintiff real estate broker for his brokerage commission that was based on his procurement of a purchaser for defendants' house.

On May 3, 1980, defendants, John and Jeanne Bedrosian (sellers), entered into an exclusive listing agreement with plaintiff, Bernard A. Wysocki, d/b/a Welcome Mat Realty, for the sale of the Bedrosian home. In that agreement, defendants agreed *inter alia* to pay plaintiff a real estate brokerage commission of 6% of the sale price provided plaintiff procured a purchaser ready, willing and able to purchase in accordance with the listing agreement. On September 23, 1980, defendants entered into a contract for sale of the residence with David and Joanne Winchell (buyers), located by the plaintiff.

Relevant financing provisions of the sale contract provided that the purchaser had 10 days to secure a written loan commitment and that upon written notice to the seller of a failure to obtain financing given within the 10 days the seller might, at his option, have an equal period of time to secure the commitment for the buyer. If the buyer failed to give the seller proper notice of his failure to obtain financing, he would be deemed to have waived the financing contingency for all purposes. If upon receipt of proper notice, the seller did not elect to or failed to secure a loan commitment for the buyer, the contract would be null and void and the earnest money refunded.

The contract also required that all notices were to be in writing, served on the parties at the address following their signatures; that

the mailing of the notice by certified or registered mail, return receipt requested, would be sufficient service; and that the seller's acceptance of the contract could be given in telegraphic form to the buyer or the listing broker who would be the buyer's agent for receipt thereof. In this latter event, the date of the receipt of the telegraphic acceptance would be the date of the contract.

The sellers accepted the contract on September 23, 1980. The 10-day financing contingency would expire at midnight, October 3, 1980. On October 3, 1980, the buyers had not as yet received a written commitment for financing. Questions later arose as to whether the sellers and buyers had entered into a valid agreement extending to October 17, 1980, the time for buyers to secure financing. Buyers did secure financing prior to the expiration of the alleged extension period, but on October 6 sellers advised that they considered the contract null and void. The sale was not consummated, and the earnest money was returned to buyers.

On April 1, 1981, plaintiff, the real estate broker, filed his complaint alleging that he had procured a purchaser for defendants' home pursuant to an exclusive listing agreement between the parties, attached to the complaint, and that plaintiff had "duly and fully performed all the terms and requirements of the Agreement" so that defendants thereby became indebted to plaintiff in the amount of 6% of the sale price, or $7,380. On August 14, 1981, defendants filed a motion to strike and dismiss the complaint due to plaintiff's alleged failure to plead that conditions precedent to defendants' duty to pay (contingencies in the sale contract) had been met. The court denied the motion the same day.

On August 27, 1982, defendants filed a motion for summary judgment supported by the affidavit of defendants and the deposition of the Winchells. On October 20, 1982, plaintiff filed a motion for summary judgment making reference to defendants' summary judgment motion and affidavits and attaching and incorporating affidavits of plaintiff and Larry Bode, plaintiff's associate. A hearing on both motions was held January 25, 1983, and the trial court granted plaintiff's motion for summary judgment while denying that of defendants.

On February 7, 1983, the court entered judgment in plaintiff's favor of $7,380 with interest from November 1, 1980, to the date of the order totaling $825.17 and costs of suit. Defendants' post-trial motion was denied, and this appeal followed. On appeal, defendants request that we vacate or reverse the judgment against them and enter judgment in their favor on their motion for summary judgment.

■ Defendants first contend that the trial court erred in denying

their motion of August 14, 1981, to strike and dismiss plaintiff's complaint. They argue that plaintiff alleged that he procured a purchaser for defendants' home and duly performed all of the terms and requirements of the exclusive listing agreement but did not allege anywhere in the complaint that the purchaser was one who was "ready, willing and able to purchase" as the listing agreement requires. Moreover, plaintiff did not plead that "conditions precedent" to the purchasers being bound, contained in the contract to purchase, were satisfied.

Defendants cite *Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 395, for the proposition that "[i]f an essential and material allegation of fact is absent from a complaint, the complaint *should* be dismissed." (Emphasis added.) In *Brunette*, the court could not find the necessary elements for an alleged agreement in the complaint and attachments thereto; to the contrary, the attachments constituted evidence of negotiations clearly contemplating a meeting to draft an agreement. Therefore, the agreement alleged in the complaint was a conclusion based on insufficiently pleaded facts. In such a case, the court concluded, a complaint may be dismissed, and the court upheld the trial court's granting of a motion to dismiss.

In this case, however, plaintiff attached a copy of the exclusive listing agreement and the contract to purchase as exhibits to the complaint, specifically referring to them in the body of the complaint. According to the Code of Civil Procedure, an exhibit is a part of the pleading for all purposes (Ill. Rev. Stat. 1981, ch. 110, par. 2—606), which would apparently include ruling on a motion to dismiss. The attached exhibits are an integral part of the complaint and must be so considered. (*Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 637.) The exclusive listing agreement here attached to the complaint states that the 6% commission is payable *inter alia* when the realtor provides a purchaser ready, willing and able to purchase, and the complaint alleges that plaintiff duly performed all of the terms and requirements of that agreement thus entitling plaintiff to a 6% commission.

Pleadings are to be liberally construed with a view of doing substantial justice between the parties. (Ill. Rev. Stat. 1981, ch. 110, par. 2—603(c).) A reviewing court should interpret the facts alleged in the light most favorable to the plaintiff (*Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 637), and an action should not be dismissed if it clearly appears that a set of facts could be proved under the pleadings that would entitle plaintiff to relief (93 Ill. App. 3d 634, 637; *Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 145). All facts well pleaded as well as

all reasonable inferences that can be drawn therefrom must be accepted as true in considering a motion to dismiss. *Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 636-37; *Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 145.

Unlike *Brunette* the exhibits attached here support the allegations in the complaint. Read together, the complaint and exhibits sufficiently allege that plaintiff procured a purchaser ready, willing and able to purchase. That was a requirement of the exclusive listing agreement entitling plaintiff to a 6% commission, and the complaint alleges that plaintiff performed all of the terms and conditions of that agreement thereby entitling plaintiff to that commission.

As to the conditions in the sale contract (1) that the buyers be able to secure financing within a stated time and, failing to do so and giving proper written notice thereof to the sellers, the buyers might avoid their contract obligation to purchase if the seller elected not to or failed to secure financing for the buyers within a like amount of time and (2) that buyers might avoid their obligation to purchase if they were unable to sell their current residence, these appear to be conditions subsequent rather than conditions precedent. A condition precedent is to be performed before the obligation becomes binding on the parties, while a condition subsequent is one which divests liability that has already attached on the failure to fulfill the conditions. (Black's Law Dictionary 266 (5th ed. 1979).) The sale contract states that buyers' failure to give proper notice of a failure to obtain financing operates as a waiver of that contingency and that with proper notice of such failure the contract will become null and void upon seller's election not to or failure to secure a commitment for the buyer. Similarly, the prior residence sale contingency allows the seller to continue to show the property to others but obligates the seller to immediately inform the buyer of any other offer they wish to accept thereby giving the buyers 72 hours to elect to waive the contingency and close within 20 days. It is clear that under both of these conditions the parties were bound to the contract, such liability being subject to divestment.

Based upon the pleadings, including the attached exhibits, together with all reasonable inferences which can be drawn from them, they constitute allegations of specific facts which, if proven, would establish that plaintiff procured a buyer ready, willing and able to purchase the subject real property. (See *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 303.) The trial court therefore properly denied defendants' motion to strike and dismiss plaintiff's complaint.

We turn then to the issues of whether the trial court erred

in granting plaintiff's motion for summary judgment and denying that of defendants. A motion for summary judgment is proper where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) The extreme nature of the summary judgment remedy requires that the trial court exercise extraordinary diligence in its review of the record so as not to preempt the right to a trial by jury or the right to fully present the factual basis for a claim. (*Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793.) The trial court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. Summary judgment should be granted only when the party's right to it is clear and free from doubt. (*Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793; *Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055.) Inferences may only be drawn from undisputed facts, and, if fair-minded persons may draw differing inferences from these undisputed facts, this presents a material issue to be tried. (*Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055.) On appeal, the court will reverse an order granting summary judgment if it determines that a material issue of fact exists and that the moving party is not entitled to judgment as a matter of law. *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793.

■ With regard to these motions, the trial court had before it the testimony of the Winchells (depositions on file), the Bedrosians (affidavit) and Larry Bode, plaintiff's sales associate (affidavit). According to Larry Bode, he called the Bedrosian residence on October 3, 1980, and advised Jeanne Bedrosian that the purchasers needed an extension to the contract until October 17, 1980, to obtain their mortgage. She said it was agreeable with her and her husband. He then indicated that there would be a written extension, and Jeanne Bedrosian directed him to leave it at their residence and she and her husband would sign it. Bode delivered the extension to the Bedrosian residence on October 3 by leaving it on the dining table. On October 6 defendants told Bode by phone that they had agreed to the extension, they had signed the agreement and they would leave it to be picked up by Bode or plaintiff when they wished, but on October 11, 1980, John Bedrosian called Bode and indicated that the Bedrosians were changing their minds and were going to void the extension by striking out their signatures. Bode, based upon the verbal statement of Jeanne Bedrosian, had communicated the extension agreement to the Winchells, who were able to obtain a mortgage commitment with the extended

period of time.

According to the Bedrosians, they contacted Larry Bode on October 3, 1980, to find out whether the Winchells had secured a written loan commitment pursuant to the real estate sale contract. On the evening of October 4, 1980, they returned to their home to find a document on their kitchen bar allegedly executed by David and Joanne Winchell informing them that they had not secured a written loan commitment and requesting an extension until October 17, 1980, to secure the same. On the evening of October 4, 1980, the Bedrosians signed that agreement, but, they further stated in their affidavit, on October 6, 1980, after receiving no communications from any of the parties involved in the sale as to when the document would be picked up by the plaintiff, they voided their signatures on the extension agreement and thereafter considered the real estate contract to be null and void. After they had voided their signatures and at approximately 5:30 p.m., they received a telephone call from Bode. They then informed him that they had voided their signatures on the extension agreement. On October 11, 1980, after receiving a call from the Bedrosians, Bode picked up the extension papers, and at 8:30 p.m. on October 11, Bode advised the Bedrosians that the Winchells had secured a written commitment for a loan. On November 17, 1980, defendants authorized their attorney to inform plaintiff that the Winchells' $1,000 earnest money should be released and refunded, as the sale contract was null and void due to the buyers' failure to meet required contingencies by their due dates. The buyers' receipt of said earnest money was acknowledged on December 2, 1980.

According to Joanne Winchell, she had received an oral confirmation from Larry Bode that the Bedrosians had accepted an extension for obtaining the mortgage. Bode had called the Bedrosians and they said they would sign the papers, but he did not get there to pick them up, and, by the time he got there to pick them up, they had voided it. She had never talked to the Bedrosians about the extension. She signed the acceptance agreement for herself and her husband. She stated that the mortgage commitment was had on October 4 or October 11.

Having considered the foregoing facts and having drawn all reasonable inferences therefrom against the moving party, we find that the trial court erred in concluding that there were no genuine issues as to material facts.

The trial court correctly observed that if the notice indicating an inability of the purchasers to obtain financing was ineffective then the financing contingency was presumed to have been met and that the

facts were otherwise sufficient to establish that the plaintiff was entitled to a judgment for his real estate commission. However, the trial court never concluded as a matter of law whether this notice was effective or ineffective; rather, the court observed that it had to rule in plaintiff's favor regardless of whether the notice was interpreted as effective or ineffective. As there was considerable evidence that this notice was properly given in accordance with the terms of the contract, the court could not, as a matter of law, have held the notice to be ineffective. We also conclude that, on this record and in view of the testimony of the Bedrosians, the court could not have held as a matter of law that the notice was effective. A genuine question of fact existed on this issue.

Defendant sellers argue that even if the buyers had given effective notice concerning their inability to secure financing the contract would be null and void after October 3, since the defendants did not elect to secure financing for them. This argument has no merit. The contract clearly provides that if the buyers properly notify defendants in writing within the time allotted that they are unable to secure financing, then the sellers have an equal period of time to secure financing for the buyer and that if the sellers fail or elect not to provide such a commitment for financing for the buyers, the contract shall be null and void. The sellers under this contract had 10 days to make the election and, according to their own affidavit, they did not consider the contract to be null and void until they voided their signatures on the extension agreement on October 6, 1980.

The crucial issue on this appeal is whether or not the trial court could conclude as a matter of law that the agreement entered into by the parties to extend the buyers' time to secure financing was a valid one. Defendants urge that the trial court erred in finding that they had entered into a valid extension agreement. They offer a number of reasons.

■ First, they erroneously argue that an extension of time to preclude the termination of a real estate contract must be in writing and signed by the parties to be charged in order to satisfy the Statute of Frauds (Ill. Rev. Stat. 1981, ch. 59, par. 2). Our supreme court has held that the time for performance of a written contract for the sale of land may be extended by parol before the time fixed in the contract has expired, notwithstanding the Statute of Frauds. (20 Ill. L. & Prac. *Statute of Frauds* sec. 7 (1956), citing *Kissack v. Bourke* (1906), 224 Ill. 352.) In *Kissack* the supreme court rejected the contention that an agreement of extension was invalid by virtue of the Statute of Frauds, observing that a party may waive strict compliance with the

contract terms by his conduct or words inconsistent with a claim afterwards asserted. (See 224 Ill. 352, 357.) Our research indicates that *Kissack* still is the law in Illinois.

■ It would appear, therefore, that if the parties entered into a binding oral agreement on October 3 to extend the time for the Winchells to secure financing to October 17, the plaintiff would be entitled under the circumstances to summary judgment. According to Larry Bode's affidavit, he spoke to Jeanne Bedrosian by telephone and secured, through her, the sellers' agreement to the extension on October 3, and he left the written extension agreement at the sellers' home the same day. The Bedrosians' affidavit does not mention this aspect of the conversation but states that they found the written extension agreement at their home on the evening of October 4. In her deposition, Joanne Winchell was unable to recall on what date she received the oral confirmation of the extension agreement from Larry Bode. A genuine issue of material fact exists as to when the oral agreement occurred.

■ Defendants also argue that the writing purportedly extending the time was not signed by the parties to be charged because Joanne Winchell signed her husband's name without having his written authorization to do so. Such authorization is generally required in contracts for the sale of real estate. (See *Hagen v. Anderson* (1925), 317 Ill. 173, 177.) However, if a writing comporting with the Statute of Frauds was not necessary in order to extend the time, then it was not necessary for Joanne Winchell to have had her husband's written authorization to sign such a writing.

Defendants strenuously maintain that the parties intended to enter into and be bound, not by an oral agreement, but by a written agreement, the acceptance of which was never properly delivered to the offeror as required in such circumstances. They contend that, under Illinois law, the agreement is not binding without delivery of the written agreement. Defendants rely on *Barton Chemical Corp. v. Pennwalt Corp.* (1979), 79 Ill. App. 3d 829, 834, for the proposition that, according to Illinois law, even if parties to a contract agree to all of its terms, there is no contract until a written document is executed where the parties understand that the execution of a formal document is a prerequisite to their being bound. Further, delivery and acceptance of a written contract are necessary if it is to be of binding effect (*Glabman v. Bouhall* (1980), 81 Ill. App. 3d 966, 969), and the mode of delivery of the offer is controlling in determining whether the acceptance has been delivered to the offeror (*Estate Stove Co. v. Kenney* (1924), 234 Ill. App. 366). Here, defendants contend, the ex-

tension offer to them was personally delivered and required the buyers' actual receipt of defendants' acceptance to be a valid and binding contract. Though they signed the written extension agreement, they voided their signatures prior to its delivery to the buyers, thus exercising their right to revoke their acceptance prior to effective delivery to the offerors (234 Ill. App. 366, 369).

However, the court in *Barton Chemical Corp. v. Pennwalt Corp.* (1979), 79 Ill. App. 3d 829, 834, went on to say that where a formal document is to be prepared to memorialize the bargain already made the bargain is enforceable even though the document has not been executed. It has been recognized that where the Statute of Frauds is not a bar, the parties may enter into a binding and enforceable contract even though no formal contract was signed or delivered, so long as all of the essential terms have been agreed upon, and that conversely, where the intent of the parties is clear that they will not be legally bound until execution and delivery of a formal agreement, no contract comes into existence until that time. *Crum v. Krol* (1981), 99 Ill. App. 3d 651, 657.

This does not mean, however, that delivery of a written agreement is a necessary prerequisite to the formation of every written contract. Again, this is a question of intent of the parties, which is the crucial element. If the clear intent of the parties is that neither will be legally bound until the execution and delivery of a formal agreement, then no contract comes into existence until such execution and delivery. The evidence may establish that the parties intended that a valid written contract exist upon execution without the necessity of delivery. (See *Lakshman v. Vecchione* (1981), 102 Ill. App. 3d 629, 632.) Whether the parties intended to be bound only by a written agreement and, if so, whether the parties further intended that delivery was prerequisite to the existence of a binding contract are genuine issues of material fact in this case.

In sum, considering the limited evidence presented by the parties in support of their motions for summary judgment and drawing all favorable inferences against the movant, we conclude that genuine issues of fact exist as to: (1) whether the notice of the buyers' inability to obtain financing was effective or ineffective; (2) whether the Winchells and the Bedrosians entered into an oral contract on October 3 extending the buyers' time to secure financing or intended only to be bound by a written contract; and (3) whether, if the parties intended to be bound by a written contract, it was also the intent of the parties that acceptance would not be complete until delivery of the contract to the buyers. Having concluded that genuine issues of fact exist, we

affirm the trial court's denial of defendants' motion for summary judgment, reverse the trial court's granting of plaintiff's motion, vacate the judgment in favor of plaintiff and against defendants, and remand the matter for further proceedings.

Affirmed in part; reversed in part and remanded.

LINDBERG and UNVERZAGT, JJ., concur.