2021 IL App (2d) 200135-U
No. 2-20-0135
Order filed January 29, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LAND CRAFTERS, INC. and PETER J. WORLATSCHEK, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 18-L-247 |
| | ) | |
| APEX LANDSCAPING, INC. and ROBERT ATWATER, | ) ) | Honorable |
| | ) | Jorge L. Ortiz |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Bridges and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court properly dismissed counts I and II of plaintiffs' second-amended complaint as plaintiffs failed to state a claim for breach of contract; counts III-VI were also properly dismissed as plaintiffs seek relief under causes of action that the court had already dismissed with prejudice; the trial court incorrectly dismissed counts VII-X of the second-amended complaint as those counts properly state claims under equitable principles.

¶ 2   Plaintiffs, Land Crafters, Inc. (Land Crafters) and Peter J. Worlatschek (Worlatschek), appeal from an order granting defendants', Apex Landscaping, Inc. (Apex) and Robert Atwater (Atwater), "motion for judgment," thereby terminating the litigation. We affirm in part, reverse in

part, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Complaint

¶ 5     On April 4, 2018, plaintiffs filed a four-count complaint against defendants for breach of a

purported agreement to buy and sell a landscaping business. Defendants moved to dismiss the

complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1

(West 2018)). The court granted the motion and gave plaintiffs leave to replead.

¶ 6                             B. The First-Amended Complaint

¶ 7     On February 13, 2019, plaintiffs filed a 14-count first-amended complaint. Allegations

primarily included breach of written contract, breach of oral contract, breach of a written guaranty,

and breach of an oral guaranty. Plaintiffs also sought relief under the equitable principles of

*quantum meruit*, unjust enrichment, and restitution. On March 28, 2019, defendants filed a motion

to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)). On June 25,

2019, the court granted defendants' motion to dismiss with prejudice with respect to the breach of

written contract, breach of a written guaranty, and restitution counts, with leave to re-plead the

remaining counts.

¶ 8                             C. The Second-Amended Complaint

¶ 9     On August 14, 2019, plaintiffs filed a 10-count second-amended complaint. In the first

count, Land Crafters alleged the existence of an oral contract for the purchase of assets.

Specifically, Land Crafters alleged that at a September 20, 2015, lunch meeting, Worlatschek

orally offered to sell Land Crafters to Apex for $300,000, to be paid in installments. The purchase

price purportedly included equipment, trucks, a trade name, a phone number, and a customer list.

At closing, $120,000 was to be paid when Apex received the tangible personal property. The

remaining balance of $180,000 was to be paid interest free in three equal installments of $60,000, with the first payment due one year after the closing date. The alleged extension of credit of $180,000 was to be personally guaranteed by Atwater.

¶ 10    In paragraph 12, Land Crafters pleaded that Atwater accepted the offer at the luncheon by responding "We've got a deal," whereupon the parties shook hands. Land Crafters simultaneously alleged, in paragraph 19, that, on or about October 10, 2015, Apex accepted this offer by the following conduct: (1) taking physical possession of Land Crafters' equipment, trucks and trailers, (2) on or about September 20, 2015, converting Land Crafters' equipment, trucks, and trailers to its own use by repainting any equipment bearing the colors of Land Crafters, (3) on or about November 1, 2015, paying $10,000 to Land Crafters, (4) on or about December 15, 2015, providing labor and materials valued at $47,223.50, which was to be applied to the oral asset sale contract, (5) on December 27, 2015, paying $23,010.56 to Harris Bank to satisfy liens against two trucks that were included in the oral contract of sale, (6) on or about December 29, 2015, paying $14,496.13 to satisfy the lien against a Case Skidster that was part of the oral contract of sale, (7) on or about December 29, 2015, paying $22,022.34 to satisfy a lien held by Kubota for a tractor, (8) on or about May 25, 2017, transferring to Land Crafters a mower worth $1600 to be applied to the oral contract of sale, (9) on June 2, 2017, paying $5000 to Land Crafters on the oral contract of sale, (10) on July 14, 2017, paying a bill on behalf of Land Crafters at Victor Ford in the amount of $1347.64, and (11) on or about September 5, 2017, paying $5000 to Land Crafters on the oral contract of sale. Land Crafters alleged that Apex breached this oral contract by failing to pay $107,799.83 of the agreed-to $300,000.

¶ 11    Count II alleged that at the same lunch meeting on September 20, 2015, Worlatschek offered to work as an employee of Apex upon the following terms: (1) employment would

commence upon Apex's receipt of tangible personal property from Land Crafters, (2) the term of employment would be three years, (3) Worlatschek would receive an annual base salary of $50,000, (4) Worlatschek would receive a commission of 7% on business that he generated from previous customers of Land Crafters, (5) Worlatschek would receive a commission of 3% on new business that he generated, (6) Worlatschek would receive a vehicle allowance of $850 per month (to include payment on a Ford F350), plus fuel and maintenance, (7) Apex had the option to purchase the F350 truck for $10,000 on February 10, 2020, so long as Worlatschek was employed by Apex, (8) Worlatschek would receive paid vacation time of 15 days a year, plus all national holidays, and (9) Atwater personally guaranteed the employment obligations, including Worlatschek's attorney fees and costs of collection procedures.

¶ 12     In paragraph 12, Worlatschek alleged that Atwater accepted his offer at the luncheon by responding, "We've got a deal," and shaking hands. In paragraph 14, Worlatschek simultaneously alleged that Apex accepted his offer of employment by the following conduct: (1) commencing Worlatschek's employment as a salesman for Apex on or about October 15, 2015, and assigning him a permanent desk and work-space, which employment continued until on or about November 16, 2018, (2) paying Worlatschek a gross weekly salary of $961.45 ($50,000 annually) until on or about December 1, 2017, (3) making payments of approximately $850 per month on the loan on the F350 truck owned and driven by Worlatschek, from on or about October 15, 2015, to on or about December 1, 2018, and (4) paying the fuel and maintenance on the F350 until on or about December 1, 2017. Worlatschek alleged that he sustained damages consisting of lost salary and commissions.

¶ 13     In count III, Land Crafters alleged that Atwater breached an oral guaranty by failing to pay $180,000 that Apex owed. As a result of this alleged breach of an oral guaranty, Land Crafters

alleged that it sustained damages totaling $107,799.83.[1] In count IV, Worlatschek alleged that Atwater breached an oral guaranty by failing to pay Apex's debt to Worlatschek under his alleged oral employment contract.[2]

¶ 14     In count V, Land Crafters alleged that Atwater breached a written guaranty to pay Apex's obligations to Land Crafters. In count VI, Worlatschek alleged that Atwater breached a written guaranty to pay Apex's obligations to Worlatschek.[3]

¶ 15     In counts VII through X, plaintiffs pleaded that no contract existed to prescribe payment for personal property or for employment services provided to Apex. Counts VII and VIII sought relief pursuant to a theory of *quantum meruit*. Specifically, in count VII, Land Crafters alleged that, at Apex's request, Land Crafters delivered to Apex personal property having a fair market value of at least $300,000. Land Crafters alleged that it did not provide these goods gratuitously and that Apex wrongly retained those goods, resulting in unjust enrichment to Apex. In count VIII,

---

[1] Although count III alleged an oral guaranty, Land Crafters attached and incorporated into the second-amended complaint a copy of the document titled "Personal Guaranty." On June 25, 2019, the trial court had dismissed with prejudice all counts relating to breach of a written guaranty.

[2] Count IV alleged breach of an oral guaranty. However, Worlatschek attached and incorporated into the second-amended complaint a copy of the document titled "Personal Guaranty." Notably, on June 25, 2019, the trial court had dismissed with prejudice all counts relating to breach of a written guaranty.

[3] In counts V and VI, plaintiffs alleged breach of a written contract, specifically, with respect to an extension of credit. On June 25, 2019, the trial court had dismissed with prejudice all causes of action on written contracts.

Worlatschek alleged that Apex wrongly retained his services because he did not provide Apex three years of his labor gratuitously. Worlatschek alleged that the unpaid value of his services totaled $180,900.

¶ 16    In count IX, Land Crafters alleged unjust enrichment in that Apex retained as a benefit, Land Crafters' personal property with a value of at least $300,000. In count X, Worlatschek alleged unjust enrichment in that Apex retained the benefit of services he rendered to it, which were worth $180,900.

¶ 17    On September 18, 2019, defendants moved to dismiss the second-amended complaint pursuant to section 2-615 of the Code because: (1) the terms of the first two counts contradicted the terms of the alleged oral contract, (2) plaintiffs failed to state a cause of action for breach of an oral guaranty because they did not establish primary liability and they did not properly plead the required elements, (3) plaintiffs pleaded a breach of extension of credit but then sought relief under an attached document labeled "Personal Guaranty," (4) plaintiffs failed to properly plead a benefit received by defendants in their *quantum meruit* counts, and (5) plaintiffs improperly pleaded unjust enrichment while also alleging the existence of an oral agreement between the parties.

¶ 18    On November 19, 2019, the trial court granted defendants' motion to dismiss the second-amended complaint in its entirety with leave to re-plead by December 24, 2019. The court noted that this was plaintiffs' final opportunity to amend their complaint. On December 23, 2019, plaintiffs filed a motion for enlargement of time to file their third-amended complaint, citing new facts coming to light, retention of additional counsel, and the approaching holidays.

¶ 19    In a January 7, 2020, order, the court denied plaintiffs' motion for enlargement of time. The court cited plaintiffs' previous opportunities to amend. The court also noted that the motion was untimely, as the matter was set for trial on January 21, 2020.

¶ 20    Without citation to any section of the Code, on January 7, 2020, defendants filed a "motion for judgment." Defendants asserted in their motion: "[b]ecause the Second Amended Complaint was dismissed in its entirety, on November 19, 2019, and Plaintiffs have failed to file their Third Amended Complaint within the time allowed and are prevented from filing their Third Amended Complaint, this Court's January 7, 2020 Order should convert this Court's prior dismissal without prejudice to dismissal with prejudice for failure to comply with the November 19, 2019 Order."

¶ 21    The following day, January 8, 2020, plaintiffs sought to invoke their right to nonsuit their case by filing a motion for voluntary dismissal. On January 14, 2020, the court granted defendants' "motion for judgment," citing plaintiffs' prior opportunities to amend their complaint. The trial court explained that its ruling on defendants' "motion for judgment" rendered moot plaintiffs' motion for voluntary dismissal.

¶ 22    Plaintiffs filed a timely notice of appeal on February 13, 2020. In their notice of appeal, plaintiffs specified their intent to appeal the court's November 19, 2019, order dismissing the second-amended complaint as well as the January 14, 2020, order granting judgment in defendants' favor.

¶ 23                                    II. ANALYSIS

¶ 24    Plaintiffs contend as follows: (1) the court erred in dismissing the second-amended complaint, (2) the court abused its discretion in denying plaintiffs' motion for extension of time to file the third-amended complaint, and (3) the court abused its discretion in ruling on defendants' motion for judgment before considering plaintiffs' motion for voluntary dismissal. Because we hold that the equitable counts of the second-amended complaint should not have been dismissed, we need not address the last two issues.

¶ 25        A. Whether the Dismissal of the Second-Amended Complaint is Reviewable

¶ 26    Plaintiffs contend that they sufficiently pleaded causes of action for breach of an oral contract, unjust enrichment, and *quantum meruit*. Before we reach the merits, we must address defendants' contention that this court lacks jurisdiction to review the November 19, 2019, order dismissing the second-amended complaint.

¶ 27    Defendants assert that the November 19, 2019, order, dismissing the second-amended complaint without prejudice and with leave to re-plead, was not final, and, thus, not reviewable pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). The jurisdiction of the appellate court is generally limited to appeals from final judgments or orders. *In re Petition to Incorporate Village of Greenwood*, 275 Ill. App. 3d 465, 469 (1995). A trial court order dismissing an action without prejudice is not a final, appealable order. *Paul H. Schwendener, Inc. v. Jupiter Elec. Co., Inc.*, 358 Ill. App. 3d 65, 73 (2005). Defendants assert that the final judgment here was the January 14, 2020, order granting their motion for judgment. Defendants' argument misses the mark, because the January 14, 2020, order converted the dismissal of the second-amended complaint to a dismissal with prejudice.[4]

¶ 28    Defendants' January 7, 2019, "motion for judgment," among other things, requested the trial court to convert its November 19, 2019, order dismissing the second-amended complaint without prejudice to a dismissal *with* prejudice. Defendants explained that this relief was proper "[b]ecause the Second Amended Complaint was dismissed in its entirety on November 19, 2019, and Plaintiffs have failed to file their Third Amended Complaint within the time allowed and are prevented from filing their Third Amended Complaint." There was no complaint on file, there was

---

[4] At oral argument, defendants acknowledged that the order dismissing the second-amended complaint was converted to a final order on their motion.

no motion for summary judgment pending, and the "motion for judgment" did not reference any section of the Code as a basis for entering judgment in defendants' favor. The only conceivable legal basis for defendants to request such "judgment" was for the trial court to convert the November 19, 2019, order dismissing the second-amended complaint without prejudice to dismissal *with* prejudice, thereby rendering a final order.

¶ 29    On January 14, 2020, the trial court granted defendants' "motion for judgment." The order was silent as to the court's reasons, and the record does not contain a report of proceedings. However, because defendants requested that the court convert the November 19, 2019, order of dismissal to one *with* prejudice, and there was no other basis in the record for granting judgment in defendants' favor, we construe the January 14, 2020, order as granting defendants' motion to dismiss the second-amended complaint *with* prejudice. Defendants cannot ask the trial court to make the dismissal of the second-amended complaint with prejudice, obtain that relief, and then argue to this court that the dismissal was without prejudice. A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court. *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007). Moreover, a party cannot avail himself of those parts of a judgment which are beneficial to him and afterward appeal, seeking to reverse those parts of the judgment that are unfavorable to him. *Young v. Hummel*, 216 Ill. App. 3d 303, 312 (1991). Thus, the January 14, 2020, order was a final order dismissing the second-amended complaint with prejudice. See *Boonstra v. City of Chicago*, 214 Ill. App. 3d 379, 385 (1991) (an order of dismissal with prejudice is final and appealable by its nature where it is based upon a determination that the complaint is not sufficient to state a cause of action).

¶ 30    Moreover, the notice of appeal asks this court to review the trial court's November 19, 2019, order dismissing the second-amended complaint. See *Burtell v. First Charter Service Corp.*,

76 Ill. 2d 427, 433-34 (1979) (a notice of appeal will confer jurisdiction on the appellate court if the notice, when considered as a whole, fairly and adequately sets out the judgment complained of and the relief sought so that the successful party is advised of the nature of the appeal). Further, the appeal was timely pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) because plaintiffs filed their notice of appeal within 30 days of the January 14, 2020, order. Accordingly, we determine that the sufficiency of the second-amended complaint is properly before us.

¶ 31            B. The Sufficiency of the Second-Amended Complaint

¶ 32    Defendants moved to dismiss the second-amended complaint pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint and it must point, with specificity, to the alleged defects on the face of the complaint. See 735 ILCS 5/2-615 (West 2018). Pleadings are to be liberally construed with a view of doing substantial justice between the parties. *Wysocki v. Bedrosian*, 124 Ill. App. 3d 158, 162 (1984). The reviewing court should interpret the assertions of the complaint in the light most favorable to the plaintiff by accepting as true all well-pleaded facts and the reasonable inferences that can be drawn from them. *Wysocki*, 124 Ill. App. 3d at 162-63. Dismissal of a cause of action is proper where a plaintiff alleges no set of facts that would entitle him to relief. *Krozel v. Court of Claims*, 2017 IL App (1st) 162068 ¶ 13. Further, a dismissal order is final and appealable by its nature where it is based upon a determination that the complaint is not sufficient to state a cause of action. *Boonstra*, 214 Ill. App. 3d at 385.

¶ 33    A trial court's dismissal pursuant to a section 2-615 motion is reviewed *de novo*. *Aurelius v. State Farm Fire & Casualty Co.*, 384 Ill. App. 3d 969, 973 (2008). For the following reasons, this court holds that the trial court did not err in dismissing counts I through VI of the second-amended complaint. However, under the common law principles of unjust enrichment and

*quantum meruit*, we hold that the trial court erred in dismissing counts VII through X of plaintiffs' second-amended complaint.

¶ 34                            1. *Count I-Breach of Oral Contract (Purchase of Assets)*

¶ 35    In count I, Land Crafters alleged the existence of an oral contract for the purchase of assets. Land Crafters alleged that Apex accepted this offer by its conduct and then subsequently breached the oral contract, resulting in damages. To establish a breach of contract, the plaintiff must allege the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff. *Werner v. Botti, Marinaccio & DeSalvo*, 205 Ill. App. 3d 673, 680 (1990). It is essential in pleading the existence of a valid contract for the pleader to allege facts sufficient to reflect the terms of the contract. *Kalkounos v. Four K's, Inc.*, 94 Ill. App. 3d 1011, 1012 (1981).

¶ 36    To constitute a contract, acceptance must conform exactly to the offer. *Schneider v. Pioneer Trust & Savings Bank*, 26 Ill. App. 2d 463, 466 (1960). An acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed. *Finnin v. Bob Lindsay, Inc.*, 366 Ill. App. 3d 546, 548 (2006). Pursuant to traditional principles of contract, the legal effect of a counteroffer is the rejection of the standing offer. *People v. Henderson*, 211 Ill. 2d 90, 103-04 (2004).

¶ 37    Plaintiffs failed to allege in their second-amended complaint the existence of a valid contract. Even assuming that the parties' lunch discussion constituted a valid offer by Land Crafters, there was never an appropriate acceptance of that offer by Apex. Acceptance of an offer needs to conform exactly to the offer. *Schneider*, 26 Ill. App. 2d at 466. For acceptance of an offer to be effective, acceptance must in every respect meet and correspond with the offer, neither falling

short of nor going beyond the terms proposed. *Mike Schlemer, Inc. v. Pulizos*, 267 Ill. App. 3d 393, 395 (1994).

¶ 38    Here, the alleged acceptance by conduct did not conform to the terms stated in the offer. The offer was to sell Land Crafters to Apex for $300,000. The purchase price included equipment, trucks, trailers, a trade name, a phone number, and a customer list. The $300,000 was to be paid in installments, with $120,000 to be paid in cash at closing when Apex received the tangible personal property. The remaining balance of $180,000 was to be paid interest free in three equal installments of $60,000, with the first payment due one year after the closing date.

¶ 39    Land Crafters alleged that Apex accepted the offer by the following conduct: (1) taking physical possession of Land Crafters' equipment, trucks and trailers, (2) on or about September 20, 2015, converting Land Crafters' equipment, trucks, and trailers to its own use by repainting any equipment bearing the colors of Land Crafters, (3) on or about November 1, 2015, paying $10,000 to Land Crafters, (4) on or about December 15, 2015, providing labor and materials valued at $47,223.50, which was to be applied to the oral asset sale contract, (5) on December 27, 2015, paying $23,010.56 to Harris Bank to satisfy liens against two trucks that were included in the oral contract of sale, (6) on or about December 29, 2015, paying $14,496.13 to satisfy the lien against a Case Skidster that was part of the oral contract of sale, (7) on or about December 29, 2015, paying $22,022.34 to satisfy a lien held by Kubota for a tractor, (8) on or about May 25, 2017, transferring to Land Crafters a mower worth $1600 to be applied to the oral contract of sale, (9) on June 2, 2017, paying $5000 to Land Crafters on the oral contract of sale, (10) on July 14, 2017, paying a bill on behalf of Land Crafters at Victor Ford in the amount of $1347.64, and (11) on or about September 5, 2017, paying $5000 to Land Crafters on the oral contract of sale.

¶ 40 The conduct allegedly constituting "acceptance" does not mirror the terms of the offer. To be validly exercised, acceptance must meet and correspond to the terms of the offer exactly. *Central National Bank in Chicago v. Fleetwood Realty Corp.*, 110 Ill. App. 3d 169, 174 (1982). Neither the dates, nor the amounts, specified in the conduct that allegedly constituted acceptance comported with the requirements of the oral offer. Despite the allegation that property changed hands on October 10, 2015, the allegations of the second-amended complaint make clear that Apex did not pay Land Crafters the $120,000 as specified in the offer. Nor, according to the pleadings, did Apex pay the $60,000 installments in accordance with the offer. *In toto*, out of the allegedly agreed-to purchase price of $300,000, Apex only paid $107,799.83. Because the alleged acceptance did not mirror what was required in the alleged offer, no contract ever came into existence. Instead, the conduct alleged to be an acceptance was a rejection/counter-offer. See *OnTap Premium Quality Waters, Inc. v. Bank of Northern Illinois, National Ass'n.*, 262 Ill. App. 3d 254, 259 (1994) (holding, in part, that no contract was formed where the plaintiff did not plead sufficient facts to establish the defendant's acceptance of the plaintiff's counteroffer).

¶ 41 In paragraph 12, Land Crafters also alleged that acceptance occurred at the lunch meeting between Worlatschek and Atwater when Atwater said, "We've got a deal," and the parties shook hands. At oral argument, Land Crafters argued only that *this* constituted the acceptance. However, the sufficiency of the pleading is at issue, and while parties are free to plead claims in the alternative, here plaintiffs pleaded inconsistent theories of acceptance in the same *count*. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (holding, in part that a party may plead claims in the alternative *i.e.* a party may plead a claim for a breach of contract as well as a claim for unjust enrichment).

¶ 42 Further, the parties dispute whether the contract contained certain conditions precedent. The parties' arguments miss the mark. Plaintiffs argue that the delayed initial payment of $120,000, was an agreed-to contract modification. Conversely, defendants assert that the initial payment of $120,000 was an unmet condition precedent, thus, the contract never came into existence. A "condition precedent" is a condition in which performance by one party is required before the other party is obligated to perform. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 668 (2007). First, the delayed initial payment of $120,000 was not a contract modification, contrary to what plaintiffs assert, for a contract had not yet come into existence; thus, there was nothing to modify. Second, defendants' assertion that the initial payment of $120,000 was an unmet condition precedent is also incorrect. There was no allegation in count I suggesting that any party was required to perform only if a certain condition occurred. Instead, the initial payment of $120,000 was a term upon which the sale would occur. As explained above, the initial payment of $120,000 was one of the various terms of the offer that was never accepted. For the aforementioned reasons, the trial court correctly dismissed count I of the second-amended complaint.

¶ 43                 2. *Count II-Breach of Oral Contract (Employment)*

¶ 44 Count II fails for the same reason outlined above: Worlatschek failed to plead an acceptance of the offer. Worlatschek alleged that at the lunch meeting, he offered to work as an employee of Apex upon the following terms: (1) employment would commence upon Apex's receipt of tangible personal property from Land Crafters, (2) the term of employment would be three years, (3) Worlatschek would receive an annual base salary of $50,000, (4) Worlatschek would receive a commission of 7% on business that he generated from previous customers of Land Crafters, (5) Worlatschek would receive a commission of 3% on new business that he generated,

(6) Worlatschek would receive a vehicle allowance of $850 per month (to include payment on a Ford F350), plus fuel and maintenance, (7) Apex had the option to purchase the F350 truck for $10,000 on February 10, 2020, so long as Worlatschek was employed by Apex, (8) Worlatschek would receive paid vacation time of 15 days a year, plus all national holidays, and (9) Atwater personally guaranteed the employment obligations, including Worlatschek's attorney fees and costs of collection procedures.

¶ 45    Worlatschek pleaded that Atwater accepted his offer at the lunch meeting. However, Worlatschek also alleged, inconsistently, that Apex accepted Worlatschek's offer of employment by the following conduct: (1) commencing Worlatschek's employment as a salesman for Apex on or about October 15, 2015, and assigning him a permanent desk and work-space, which employment continued until on or about November 16, 2018, (2) paying Worlatschek a gross weekly salary of $961.45 ($50,000 annually) until on or about December 1, 2017, (3) making payments of approximately $850 per month on the loan on the F350 truck owned and driven by Worlatschek, from on or about October 15, 2015, to on or about December 1, 2018, and (4) paying the fuel and maintenance on the F350 until on or about December 1, 2017.

¶ 46    Worlatschek alleged that his employment commenced when Apex received "tangible personal property" from Land Crafters. Worlatschek did not allege, however, that Apex ever received this unspecified "tangible personal property." The conclusion to be drawn from this omission is that Apex never accepted Worlatschek's offer of employment. Because Worlatschek failed to plead acceptance of the offer, we hold that the trial court properly dismissed count II of plaintiffs' second-amended complaint.

¶ 47              3. *Counts III and IV-Breach of Oral Contract (Guaranty)*

¶ 48    In counts III and IV, Land Crafters and Worlatschek, respectively, attempted to plead that Atwater orally guaranteed Apex's obligations. A guaranty contract is an agreement between a guarantor and a creditor wherein the guarantor agrees to be secondarily liable to the creditor for a debt or obligation owed to the creditor by a third party/the debtor. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 448-49 (2009). Because the trial court correctly dismissed the first two counts of the second-amended complaint (breach of contract), it follows that there can be no secondary liability for breach of a personal guaranty. *Frenkel v. Ragen*, 257 Ill. App. 110, 114 (1930) (a guaranty is a secondary and not a primary obligation and can exist only where there is some principal or substantive liability to which it is collateral). Moreover, as defendants point out, plaintiffs sought relief under a *written* guaranty. However, on June 25, 2019, in connection with its ruling on defendants' motion to dismiss the first-amended complaint, the trial court dismissed with prejudice the plaintiffs' causes of action pursuant to that written guaranty. For the foregoing reasons, we hold that the trial court properly dismissed counts III and IV of plaintiffs' second-amended complaint.

¶ 49        4. *Counts V and VI-Breach of Written Contract (Extension of Credit)*

¶ 50    Exhibits attached to the complaint are part of the complaint and must be considered when ruling on a section 2-615 motion to dismiss. *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1033-34 (2006). A complaint is subject to dismissal for failure to state a claim if the exhibits attached to the complaint contradict an essential allegation of the complaint. *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d. 390, 395-96 (1970). Here, although the subheadings of counts V and VI asserted that these counts pleaded a cause of action for "breach of written contract-extension of credit," in both counts plaintiffs referenced the attached written "Personal Guaranty."

Moreover, in count V, plaintiffs even requested relief as a result of a "breach of the written contract of guaranty."

¶ 51　　Plaintiffs face the same problem as in counts III and IV. In its June 25, 2019, order, the trial court dismissed with prejudice the causes of action relating to breach of a written guaranty. Plaintiffs did not indicate in the second-amended complaint that those counts were brought to preserve the issue of the viability of the written guaranty for appeal. *Doe v. Roe*, 289 Ill. App. 3d 116, 120 (1997) (a party desiring to preserve for review the dismissal of claims contained in a former complaint has only two choices: she may either stand on the dismissed counts and challenge the ruling at the appellate level, or she may reallege the dismissed counts in subsequent complaints). Consequently, counts V and VI were correctly dismissed.

¶ 52　　　　　　　　　　　　5. *Counts VII and VIII-Quantum Meruit*

¶ 53　　*Quantum meruit* exists in the absence of a contract, and it describes a cause of action seeking recovery for the reasonable value of services non-gratuitously rendered. *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61. To recover under *quantum meruit*, a plaintiff must prove: (1) it performed a service to the benefit of the defendant, (2) it did not perform the service gratuitously, (3) the defendant accepted the service, and (4) no written contract existed that prescribed payment for the service. *Jameson*, 2018 IL App (1st) 171534, ¶ 61. In addition, *quantum meruit* is distinguished from unjust enrichment in the way damages are calculated. *Jameson*, 2018 IL (1st) App 171534, ¶ 61. In an action for *quantum meruit*, the measure of damages is the reasonable value of the work and material provided. *Jameson*, 2018 IL App (1st) 171534, ¶61. In a claim for unjust enrichment, recovery is limited to the benefit acquired. *Herbert W. Jaeger & Associates v. Slovak American Charitable Ass'n.*, 156 Ill. App. 3d 106, 111 (1987). Finally, *quantum meruit* is used as an equitable remedy to provide restitution for unjust enrichment

and is often pleaded as an alternative claim in a breach-of-contract case so that the plaintiff may recover even if the contract is unenforceable. *Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 522 (2009).

¶ 54    Here, in counts VII and VIII, plaintiffs stated viable causes of action for *quantum meruit*. In count VII, Land Crafters alleged that it, at Apex's request, delivered personal property including tools, equipment, trucks, trailers, a tradename, a phone number, and a customer list, having a fair market value of at least $300,000. Land Crafters further alleged that it did not perform this service gratuitously and that this service was to Apex's benefit and to Land Crafters' detriment. Land Crafters alleged that no contract existed to prescribe payment for these services. Further, Land Crafters alleged that the remaining balance due on the value of those goods was $107,993.83.

¶ 55    Plaintiffs alleged in count VIII that Worlatschek provided services to benefit Apex from on or about October 15, 2015, through on or about December 1, 2018. Plaintiffs further asserted that Worlatschek did not provide these services gratuitously. Plaintiffs alleged that Apex accepted Worlatschek's services as a landscape salesman. Plaintiffs alleged that no contract existed to prescribe payment for these services, the unpaid value of which purportedly totaled $180,900. Defendants argue that these counts were properly dismissed, as the allegations sounding in quasi-contract contradicted the rest of the second-amended complaint, which alleged the existence of an express contract. Plaintiffs respond that these counts were brought in the alternative to the counts alleging an express contract. Defendants counter that plaintiffs did not label counts VII and VIII as being pleaded in the alternative. Plaintiffs were careful to incorporate only those allegations of prior counts that pleaded an offer, not the existence of a contract. For example, count VII realleges multiple paragraphs of count I which assert the existence of an oral offer, only, not the existence of a contract. Consequently, plaintiffs sufficiently indicated that these counts were brought in the

alternative. See *Tuttle v. Fruehauf Div. of Fruehauf Corp.*, 122 Ill. App. 3d 835, 842 (1984) (explaining there is not some magic in labeling inconsistent pleadings "alternative" or "hypothetical" which invokes the principle underlying the alternative pleading rule).

¶ 56 Defendants maintain that plaintiffs failed to state a cause of action for *quantum meruit* because they failed to specifically allege any benefit received by defendants. While a plaintiff is not required to prove his entire case in his complaint, the purpose of pleadings is to present, define, and narrow issues and to inform the defendant and the court of conduct for which the defendant is called upon to answer. *Harris*, 218 Ill. App. 3d at 591. The reviewing court should interpret the assertions of the complaint in the light most favorable to the plaintiff by accepting as true all well-pleaded facts and the reasonable inferences that can be drawn from them. *Wysocki*, 124 Ill. App. 3d at 162-63 (1984). Here, accepting well-pleaded facts as true, plaintiffs alleged that Apex retained goods worth $300,000 and services worth over $180,000. By any definition, the retention of almost half a million dollars constitutes a benefit. The benefits derived by Apex employing Worlatschek as a landscape salesman to service his former clients also meet the standard for pleading, which requires only that the ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts. *Borcia v. Hatyina*, 2015 IL App (2d) 140559, ¶ 21. Consequently, we hold that the trial court erred in dismissing counts VII and VIII.

¶ 57                     6. *Counts IX and X-Unjust Enrichment*

¶ 58 We now turn to the trial court's dismissal of counts IX and X of the second-amended complaint. Those counts sought damages from defendants based upon an unjust enrichment theory. To state a claim for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that defendant's retention of the benefit violates

the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989).

¶ 59　In count IX, Land Crafters alleged that, at Apex's request, it delivered personal property to Apex worth $300,000. Land Crafters also alleged that Apex's retention of that personal property was a benefit to Apex and a detriment to Land Crafters. Land Crafters further alleged that the retention of this benefit by Apex violated fundamental principles of justice, equity, and good conscience and that Land Crafters is still due $107,800 of the $300,000.

¶ 60　In count X, Worlatschek pleaded unjust enrichment for the services he provided to Apex as a landscape salesman having a fair market value of $180,900. Worlatschek alleged that the retention of these services was a benefit to Apex and a detriment to him. Further, Worlatschek alleged that the retention of this benefit by Apex violated fundamental principles of justice, equity, and good conscience and that Worlatschek is still due $180,900. In both counts, plaintiffs all but mirrored the common law elements of an unjust enrichment action. See *National Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 67 (to prevail on a claim for unjust enrichment, a plaintiff must prove that the defendant retained a benefit to the plaintiff's detriment and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience).

¶ 61　Consequently, we hold that plaintiffs sufficiently pleaded causes of action for unjust enrichment. Accordingly, we affirm the court's dismissal of counts I-VI, reverse the dismissal of counts VII-X, and remand for further proceedings.

¶ 62　　　　　　　　　　　　　　　III. CONCLUSION

¶ 63　For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings.

¶ 64    Affirmed in part and reversed in part. Cause remanded.